Anderson JONES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15184.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 11, 1959.
Decided Oct. 15, 1959.

Edgerton, Circuit Judge, dissented.

———◆———

Mr. Philip A. Fleming, Washington, D. C., for appellant.

Mr. Lewis Carroll, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Following appellant's conviction for violation of narcotics laws, the District Court denied and we granted an appeal in forma pauperis and appointed counsel to prosecute this appeal at government expense. Very able counsel so appointed has skillfully and exhaustively presented appellant's case in this court. In view of the action we now take, a recital of the facts and appellant's contentions becomes important, although we think this case deserves no more than a bare order dismissing it as frivolous.[1] It is abundantly clear on the full record now before us that the appeal at government expense was improvidently granted, and it is dismissed as frivolous.

### (1)

Appellant contends that narcotics seized from his person at the time of his arrest should have been suppressed because there was no probable cause for his arrest; he argues now, although he did not request it in the District Court, that he had an absolute right to be informed of the identity of the person who told the police that he was transporting narcotics.

The record discloses the undisputed facts to be as follows: On and for some time before March 6, 1958, appellant, who had a record of narcotics convictions,[2] was under investigation and surveillance for suspected narcotics traffic. On March 6th, 1958, at 3 or 3:15 P.M., Detective Ernst of the Washington Police Department received a long distance telephone call from a confidential informant in New York City, who had been found reliable on many occasions over a period of 5 years, advising that appellant had just purchased narcotics in New York

---

1. 62 Stat. 954 (1948), as amended, 28 U.S.C. § 1915(d) (1952) provides:

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, *or if satisfied that the action is frivolous or malicious.*" (Emphasis added.) See also United States v. Johnson, 1946, 327 U.S. 106, 112–113, 66 S.Ct. 464, 467, 90 L.Ed. 562. Justice Black: "It is obvious, however, that this privilege [of moving for a new trial for newly discovered evidence] might lend itself for use as a method of delaying enforcement of just sentences. Especially is this true where delay is extended by appeals lacking in merit. * * * One of the most effective methods of preventing this abuse is for appellate courts to refrain from reviewing findings of fact which have evidence to support them. * * * the Circuit Court of Appeals * * * upon determining that the only objection was to the trial court's findings on conflicting evidence, should have decided that this does not present a reviewable issue of law *and on its own motion have dismissed the appeal as frivolous.*" (Emphasis added.)

2. Appellant had two prior convictions for violations of the narcotics laws; for petty larceny; for larceny, and for attempted procuring for prostitution.

and was already on the afternoon train transporting the narcotics to Washington. The informant said appellant was scheduled to arrive at about 4:30 P.M. Officer Ernst, who was aware that appellant was then under investigation for suspected narcotics activities, accordingly contacted Officer Somerville, who was engaged in that investigation. Somerville was in court and the information was not communicated to him until about 4 P.M. whereupon he proceeded immediately to the Union Station by taxi-cab—regular police cars not being available at the moment. This suggests something of the urgency of the situation.

Somerville, who knew appellant by sight, observed the latter just after he had disembarked from the New York train and was walking from the train platform into the station with a newspaper held up before his face. When Somerville accosted Jones, the latter said to the officer, "How the hell did you know I was here?" Appellant was immediately arrested and the arresting officer testified that at the time he could see part of a brown paper bag in appellant's pocket. In the bag were the cellophane packages containing the heroin which appellant sought to suppress in his pretrial motion.

### (2)

The issue presented by this appeal, simply stated, is whether under all the facts and circumstances presented, there was probable cause and reasonable grounds to believe that appellant was committing a violation of the narcotics laws as he entered the Washington depot from the New York train.[3] In light of undisputed evidence the contention that there was no probable cause is frivolous in the extreme. Indeed under the decided cases his arrest would have been proper independent of the arresting officer's knowledge of the then pending investigation of appellant's suspected nar-

cotics activities, or of his prior convictions. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Brandon v. United States, —— U.S.App.D.C. ——, 270 F.2d 311.

When at 4 P.M. Officer Somerville set out to pursue the "tip" from the New York informant, a series of related elements were involved in his evaluation of probable cause for an arrest. The *first* was, as the record shows, that appellant was then under investigation and surveillance for suspected narcotics traffic; the *second* element, also plain in this record, was that appellant had a long criminal history, including two prior narcotics convictions; *third*, and likewise undisputed, was the prediction or information from a known reliable source that appellant had just purchased narcotics in New York and was even at that moment on the train due to arrive at 4:30. When appellant, who was known to Somerville by sight, alighted from the train as predicted, the officer then had verified every detail of the information given by the New York informant save one: whether in the bulging pocket, or elsewhere on his person, appellant had the predicted narcotics.

In the moments preceding the actual encounter and arrest, there was crystallized all the elements of "reasonably trustworthy information * * * sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 1925, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. Specifically, he had reasonable grounds to believe that the only remaining unverified prediction, *i. e.*, that appellant would have narcotics, was likewise probably true. The essence of the matter is the probability of truth, not

---

3. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 relied on by the dissent is not at all in point for it is not one turning on probable cause for arrest, but with "the Government's right to withhold the identity of

an informer *who helped to set up the commission of the crime and who was present at its occurrence.*" Id. at page 61, 77 S.Ct. at page 628. (Emphasis added.)

the certainty. If certainty were required few if any arrests could ever be made in the effort to curb the narcotics traffic—or indeed in most areas of law enforcement. To ask more of law enforcement officers is to set up standards totally separated from reality.

From Chief Justice Marshall in Locke v. United States, 1813, 7 Cranch 339, 348, 11 U.S. 339, 348, 3 L.Ed. 364, through the more recent cases of Brinegar, supra, and Draper, supra, there has been a consistent pattern of distinguishing between the evidence required to sustain a conviction and evidence required to sustain probable cause for arrest or for the issuance of a warrant. Nowhere is there a better statement of this proposition than in United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, 106, where Judge Learned Hand said:

"It is well settled that an arrest may be made upon hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties." (Footnote omitted.)

And see Wrightson v. United States, 1956, 98 U.S.App.D.C. 377, 236 F.2d 672.

■ There would be no occasion to deal with this case beyond a bare order of dismissal of the appeal but for the persistent attacks upon these well settled principles, which were so emphatically reaffirmed as recently as 1958 by the Supreme Court in the Draper case. These attacks urge that no valid warrant can issue, or arrest be made, or anything less than evidence sufficient and admissible to prove guilt. In the Draper case,[4] where the facts were strikingly similar to the circumstances surrounding the arrest of appellant and the events leading up to his arrest, Mr. Justice Whittaker took pains to emphasize that the notion that a search warrant may issue or that an arrest may be made only upon such evidence as would be admissible to prove guilt had been "thoroughly discredited and rejected." 358 U.S. at page 312, note 4, 79 S.Ct. at page 332. It would be difficult to imagine a more conclusive case of

---

4. In the Draper case the Supreme Court said:

"Nor can we agree with petitioner's second contention that Marsh's information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. The information given to narcotic agent Marsh by 'special employee' Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a 'fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

" 'In dealing with probable cause, * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543]." Draper v. United States, 358 U.S. 307, 312–313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327.

probable cause and reasonable grounds for arrest. Police officers who would have failed to arrest appellant in these circumstances would be guilty of gross dereliction of duty.

Appeal dismissed as frivolous.

EDGERTON, Circuit Judge (dissenting).

"Under the principle of Roviaro [Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639], the District Court could not properly determine that there was probable cause for petitioner's arrest without requiring disclosure of the identity of the informer whose report was claimed to constitute such cause."[1] The Supreme Court said in Roviaro that although there is a government privilege to withhold the identity of an informer, a "limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * * Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential com-

munication." 353 U.S. at pages 60–61, 77 S.Ct. at page 628.

It does not appear that there was any evidence, apart from the confidential communication, to establish probable cause for arresting the present defendant. An informer told the police that the defendant would arrive in Washington by a certain train and would be carrying narcotics. The arresting officer testified that the arrest was "based on that information", and that he did not have "any other information concerning the defendant, one way or the other." An investigation of the defendant was under way but is not shown to have turned up anything. It follows that unless the police reasonably believed that the informer was reliable, the arrest was without probable cause and therefore unlawful. In that case the seizure of the narcotics was unlawful and they should not have been admitted in evidence.

Apart from the narcotics, the government had no case against the defendant. It was therefore exceedingly "relevant and helpful to the defense", and "essential to a fair determination of [the] cause", that the informer's identity be disclosed,[2] so that his reliability could be "subjected to meaningful judicial scrutiny rather than accepted on a policeman's word."[3] When the defendant's trial counsel (not his present counsel) moved to suppress the narcotics on the ground that their seizure was "incident to an arrest without a warrant and without probable cause", the prosecutor claim-

1. Statement of Judge Bazelon alone on the granting by this court (Judges Miller, Bazelon and Burger; Judge Miller dissenting) of leave to appeal *in forma pauperis* in this case. Jones v. United States, 105 U.S.App.D.C. 326, 266 F.2d 924, 930. No other statement was filed.

2. Because the identity of the informer was disclosed in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, I think that case irrelevant.

3. Statement of Judge Bazelon, supra, 266 F.2d at page 929.
   Since the question whether the officer had probable cause to arrest the defend-

ant turns on the informer's reliability as known to the officer at the time of the arrest, the finding of narcotics on the defendant after the arrest seems to me irrelevant. In United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210, the Supreme Court said: "The Government's last resort in support of the arrest is to reason from the fruits of the search to the conclusion that the officer's knowledge at the time gave them grounds for it. We have had frequent occasion to point out that a search is not to be made legal by what it turns up."

ed a government privilege not to disclose the informer's identity. In denying the motion, the court sustained the claim of privilege, and defense counsel acquiesced in the ruling. I think counsel acted on a misunderstanding of law occasioned by the prosecutor and the court.

There may have been, but also there may not have been, probable cause for the arrest. The error of court and counsel left the question wide open. In the interest of the fair administration of criminal justice, I would remand the case to the District Court with directions to hold a supplemental hearing on the defendant's motion to suppress, at which the informer's identity will be disclosed, if the defendant wishes to inquire into the informer's reliability. If the defendant does not wish to inquire, or if inquiry shows that the informer was known to be reliable, appellant's conviction should stand. But if upon inquiry it is not shown that the informer was known to be reliable, in my opinion the court's refusal to suppress the narcotics was plain error affecting substantial rights, within the meaning of Fed.R.Crim.P. 52 (b), 18 U.S.C.A., and the defendant is entitled to a new trial.