UNITED STATES of America, Appellee,

v.

Samuel Joseph RUGENDORF, Appellant.

No. 13967.

United States Court of Appeals Seventh Circuit.

April 30, 1963.

Rehearing Denied May 24, 1963.

590

Julius Lucius Echeles and Frank W. Oliver, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before DUFFY and KNOCH, Circuit Judges, and MERCER, District Judge.

DUFFY, Circuit Judge.

Defendant was tried before a jury and was convicted of receiving, concealing and storing goods, wares and merchandise of a value in excess of $5,000, knowing the same had been stolen and transported in interstate commerce in violation of Section 2315, Title 18 United States Code. The goods were identified in the indictment as 81 fur pieces which had been stolen in Shreveport, Louisiana and Mountain Brook, Alabama, and which had moved in interstate commerce from Shreveport and Mountain Brook to Chicago, Illinois.

On this appeal, defendant argues (1) the evidence was insufficient to sustain the verdict of guilty; (2) the trial court erred in overruling defendant's motion to suppress the evidence, and (3) the trial court erred in refusing to require the government to reveal the source of the information contained in the affidavit, pursuant to which a search warrant was issued.

Defendant and his wife owned and occupied a two-story brick, single family dwelling in the City of Chicago. The basement was partitioned into two sections by a wall running east and west. The rear or south part contained two smaller rooms, one of which was a laundry and furnace room, and the other a general storage room. In the northern section, there was a nicely finished recreation room. At the east wall of this room there was a business-type desk with a telephone. In the center of the room was a card table and sewing machine. There were closets built into the north wall. During the search, Agent McCormick opened the doors to these closets, and in the last one discovered 81 furs hanging on individual wire hangers which hangers were on a rod that extended the length of the closet. The labels had been torn out of the garments. There were, in fact, 82 fur pieces, but Mrs. Rugendorf, the wife of defendant, identified one of the fur pieces as belonging to her.

Defendant's wife testified that she and her husband left Chicago on the evening of February 17, 1962, for a vacation in Florida and Nassau; that they returned to Chicago on March 4, 1962; that during the period of their absence, her brother-in-law, Leo Rugendorf, her son, her sister-in-law and one Roskin all had keys to the house. She testified the defendant did not go into the basement

between March 4, and March 22. The defendant gave similar testimony and in addition testified he had no occasion prior to February 17, 1962, to go to the basement or to look at the closets. There also was testimony that defendant's brother, Leo, was a well-known "fence."

There is no dispute that on March 22, 1962, agents of the Federal Bureau of Investigation found in the basement of defendant's home, the loot of two burglaries, one of which occurred at Shreveport, Louisiana, December 4 and 5, 1961, and one at Mountain Brook, Alabama, on February 10, 1962.

There were a number of conflicts in the evidence which the jury was entitled to and did resolve. To illustrate, defendant testified that before he left on his vacation, he gave the key to his house to his brother Leo and that the key had not been returned. Agent Lee testified that when defendant was arrested he stated that Leo came into defendant's place of business shortly after he had returned from Florida and returned the key to him.

The situation in the case at bar is somewhat similar to that in United States v. Mann, 7 Cir., 108 F.2d 354, 358, where we said: "Here, the jury rejected defendant's professions of innocence in the face of stubborn facts plainly pointing to his guilt."

■ Knowledge of the stolen character of the goods may be established by circumstantial evidence. United States v. O'Brien, 7 Cir., 174 F.2d 341; United States v. Allegrucci, 3 Cir., 258 F.2d 70.

■ We hold that the evidence, viewed in the light most favorable to the government, clearly supports the conviction of the defendant.

Defendant argues that the affidavit which was the basis of the issuance of the search warrant was based on hearsay information and therefore insufficient. Defendant relies upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

Agent Moore of the F. B. I. swore that an informer who had furnished reliable information in the past reported to affiant that he had seen 80 fur garments in defendant's basement a few days previously, describing them as mink, otter and beaver jackets, with labels removed, and that the informant had been told the furs were stolen.

We think defendant's reliance upon Jones v. United States, supra, is misplaced. We quote the following from the opinion in that case (362 U.S. pages 270–271, 80 S.Ct. at pages 735–736, 4 L. Ed.2d 697): " * * * In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded.

"We conclude therefore that hearsay may be the basis for a warrant. We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly. * * * But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient. * * * "

In United States v. Eisner, 6 Cir., 297 F.2d 595, 596, the Court, relying on the Jones case, upheld the sufficiency of an affidavit which stated " 'Information has been obtained by S. A. Clifford Anderson, F. B. I., Cincinnati, Ohio, which he believes to be reliable to the effect that Sam Eisner received furs which were a part of the loot from the Davidson Indiana Fur Co. in Ky., after they had been transported from Indianapolis, and had knowledge that they had been stolen.' " It will be noted that the affidavit in the case at bar is quite similar to that approved in the Eisner case.

■ We hold there was no abuse of discretion on the part of the Commissioner in issuing the search warrant. There was present a sufficient basis for the determination by the Commissioner of the existence of probable cause.

The remaining point raised by defendant as error is the refusal of the trial court to require the disclosure of the name of the informer. The defendant relies on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

At the trial, when the prosecutor refused to disclose the name of the informer, he stated the ground of his objection was "because it would cause a possible murder." Involved here is what has often been termed the "informer's privilege." However, it is the privilege if any, of the government to withhold the names of persons who have supplied information leading to the detection of crime and the apprehension of the criminal.

The Supreme Court, in the early case of In re Quarles and Butler, 158 U.S. 532, 535–536, 15 S.Ct. 959, 960–961, 39 L.Ed. 1080, stated: " * * * and such information, given by a private citizen, is a privileged and confidential communication, for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government. * * * "

However, an exception to this rule was stated in Roviaro v. United States, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639. The Court there held that when the disclosure of the name of the informer is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." The Supreme Court further stated in Roviaro v. United States, supra, 353 U.S. at page 62, 77 S.Ct. at pages 628–629, 1 L.Ed.2d 639: "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. * * * "

In Roviaro, the informer was the only person, other than the defendant, who participated in the transaction charged in the indictment. He was the only witness other than the defendant who could have disclosed entrapment, if any.

In Jones v. United States, 106 U.S. App.D.C. 228, 271 F.2d 494, 496, fn. 3, cert. den. 362 U.S. 918, 80 S.Ct. 674, 4 L.Ed.2d 741, the Court had for decision the question of whether it was error to fail to disclose the name of the confidential informant, when it was his information, relayed through another agent, that was the basis of establishing probable cause. The Court there said that Roviaro was applicable only when the informer " 'helped to set up the commission of the crime and * * * was present at its occurence.' * * * (Emphasis added.)"

The Courts of Appeal of several Circuits have considered the reach of Roviaro but have, nevertheless, upheld the action of trial courts in refusing to compel the government to disclose the name of the confidential informant.

In Miller v. United States, 5 Cir. (1959), 273 F.2d 279, cert. den. 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747, the trial court had refused to require the government to disclose the name of the informant who had furnished the information giving the officers probable cause to arrest without a warrant. The Court of Appeals discussed Roviaro and also Gilmore v. United States, 5 Cir., 256 F.2d 565, and stated at page 281 of 273 F.2d: "We think that the circumstances of this case differ crucially from those cases in which disclosure was required. We hold that it was not error to refuse to require the Government to divulge the identity of its source of information. * * * We are not dealing with one who was an active participant in the crime * * * and one who would have been able to testify directly about the very transaction constituting the crime. * * * We think all the evidence discloses is that the informer was an informer and nothing more."

In a recent case, the Fourth Circuit, in United States of America v. Whiting, 311 F.2d 191 (1962), refused to compel the government to disclose the name of a

confidential informant who had furnished information leading to the obtaining of a search warrant. The Court said at page 196 of 311 F.2d: "In the present case, however, we have no such situation for, as the attorney for the defendants admitted, the names of the informers were wanted in support of the effort to invalidate the search warrant and not to help the defendants in the presentation of their case."

We hold it was not error for the trial court to refuse to compel the government to disclose the name of its confidential informant.

Affirmed.