James E. SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19186.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 8, 1965.

Decided Feb. 18, 1966.

Petition for Rehearing En Banc denied
April 4, 1966.

Bazelon, Chief Judge, dissented.

Mr. Glenn R. Graves, Washington, D. C., with whom Mr. John W. Karr, Washington, D. C., was on the brief, for appellant. Miss Lynn D. Allan, Washington, D. C., also entered an appearance for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, Messrs. Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and TAMM, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal from a conviction on a one-count narcotics indictment for violation of 26 U.S.C. § 4704(a), which makes it a felony for "any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package * * *." Appellant challenges the admission in evidence of narcotics seized from him immediately following arrest, first on the ground the arrest was without probable cause and second because of denial of his request for disclosure of the identity of an informant upon whose information the arrest was based.

On the motion for suppression of the narcotics the following facts were shown: at about 12:30 a. m., July 31, 1964, Vincent Lozowicki, a Federal Narcotics Agent in Baltimore, received a long distance telephone call from an informant who said that he was in New York City, where "Smitty" and "Ollie Jones" had just boarded the 12:30 Trailways Express Bus to Washington, D. C., and that Smitty was carrying one ounce of heroin and Ollie some cocaine. He described each of the men in detail.

Lozowicki testified that he recognized the voice of the caller as that of an informant who had given him reliable information three or four times in Baltimore and with whom he had talked by telephone "at least two dozen times." Lozowicki said that the Baltimore office had not made arrests based on this informant's information, although he was aware that "our office in Europe" had made several such arrests. After ascertaining from the bus company that the particular express bus was indeed one which would not stop in Baltimore, Agent Lozowicki telephoned Federal Narcotics Agent John E. Thompson in Washington and relayed to him the information he had received from the informant in New York. Lozowicki did not discuss the informant's reliability with Thompson.

Agent Thompson testified that he had received information from Lozowicki regarding suspected interstate transportation of narcotics on previous occasions. Thompson, an officer of nine years' service in the Bureau of Narcotics, testified that he at once recognized the name of Ollie Jones "as a New York source of supply for Washington, D. C., for heroin." He said he "knew several suspected violators in Washington by the name of Smitty," but did not know whether this particular Smitty was one of them. Thompson did not attempt to get a warrant for Ollie Jones or Smitty but instead proceeded at once to gather several agents to go to the Trailways Bus Station. When the bus described by the informant arrived at about 4:40 a. m., Thompson saw men who met the informant's descriptions of Smitty and Ollie Jones get off the bus. He testified that he recognized Smitty as being a person who had been pointed out to him previously as a narcotics seller. The two were promptly placed under arrest, and a search of Appellant disclosed in his pants pocket a package containing a substance later identified as heroin. No pre-trial

statement of either of the two men is in evidence.

Appellant makes two attacks on the validity of his arrest. First, he contends that the arresting officer individually must have information which would be sufficient to sustain a warrant, and that Thompson did not possess the requisite information. Second, he claims that there was insufficient evidence of the reliability of the informant and that, taking together Thompson's and Lozowicki's information, the police failed to show probable cause for the arrest.

Striped down to its essentials, Appellant's first contention is that (1) the Constitution requires the *arresting* officer personally, independent of his police colleagues, to have knowledge of all facts necessary to constitute probable cause including reliability of any informants; and (2) Lozowicki's prior relationship with the informant, from which he concluded that he was reliable, may not be attributed to or relied upon by Thompson for the purpose of satisfying probable cause requirements.

■■ The short answer to this claim is that this Court has already decided that probable cause is to be evaluated by the courts on the basis of the collective information of the police rather than that of only the officer who performs the act of arresting. Samuel J. D. Williams v. United States, 113 U.S. App.D.C. 371, 308 F.2d 326 (1962); Anderson Jones v. United States, 106 U.S.App.D.C. 228, 271 F.2d 494 (1959), cert. denied, 362 U.S. 944, 80 S.Ct. 809, 4 L.Ed.2d 771 (1960). Accord, United States v. Bianco, 189 F.2d 716 (3d Cir. 1951). Appellant fails in his efforts to distinguish these cases. Moreover, Appellant's reasoning suffers from a more basic fallacy than adverse precedent. Certainly two or three government agents together could go before a Commissioner to procure a warrant on the sum of their information and, once that warrant is issued, none of them need participate in the actual arrest.

■ The knowledge or information of the arresting officer at the time of arrest is relevant only where an arrest is predicated on that officer's personal observations and information concerning the criminal act. The correct test is whether a warrant if sought *could have* been obtained by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed.

The cases cited to us by Appellant do not suggest a different solution. Indeed, in Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), four officers participated in the arrest. Each of them had bits and pieces of information only the gist of which he had communicated to his fellows. The Supreme Court did not inquire whether *one* of them could have procured a warrant but rather found that the sum of the knowledge of all of them was sufficient.

In Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), the Supreme Court said, "The troublesome line * * * is one between mere suspicion and probable cause. That line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." To sustain Appellant's sweeping claims we would be required to strike hard at police incentive to perform this "act of judgment" and reduce them to automatons. Here Agent Lozowicki made a judgment of the informant's reliability based upon reasonable grounds growing out of his prior relationship with the informant, and he acted on that judgment by his call to Thompson, who in turn could reasonably and properly infer what Lozowicki told him that the latter had made this judgment, whether he did or did not say this in so many words. We can hardly think that a ritualistic recital by Lozowicki to Thompson that he knew his informant to be reliable would add anything to the latter's appraisal of what course he should follow.

We said in *Williams, supra,* "The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime." 113 U.S.App.D.C. at 372, 308 F.2d at 327. In so holding we anticipated what the Supreme Court held in United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed. 684 (1965): "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." The applicability of our *Williams* holding is not dependent on showing something resembling a common law agency relationship between the officers involved; nor would the involvement of officers from different cities or even different police organizations diminish the applicability of *Williams.* Much of the basis for federal enforcement of statutes relating to illicit narcotics traffic would be destroyed if we were to fashion the law as Appellant's view would have it.

■ As we have said, Lozowicki had ample basis for concluding that the informant was reliable; additionally, Thompson's observations before arresting Appellant gave him substantial confirmation of the reliability of the informant and of his information. Appellant's reliance on Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), ignores the significant factual distinctions between the two situations; there the warrant was for the search of a *dwelling* and the warrant application recited naked conclusions rather than "underlying circumstances."[1] Here, on the other hand, we are dealing with a street arrest based on reliable information which fixed the precise hour, the precise public place and the precise persons who would be found carrying illicit narcotics; moreover the information was transmitted to an officer who had prior information concerning one of the alleged carriers and personal acquaintance with the other. Using his common sense and trained police judgment, Thompson synthesized what he had been told and what had been predicted with what he personally observed and what he knew. Thus we have an arrest based not simply on what the informant in New York communicated to Lozowicki in Baltimore but the sum of all information known by Lozowicki and Thompson before the time of actual arrest reinforced by what the arresting officers observed after arriving at the Bus Depot.

Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), in no way indicates a different result unless we are to assume that the passage of six years has in some way undermined Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), even while the Supreme Court continues to cite it with approval. E. g., United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Beck v. State of Ohio, *supra;* Wong Sun v. United States, 371 U.S. 471, 480, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Aguilar* no more "erodes" our holding in *Anderson Jones, supra,* than it erodes the *Draper* holding, which dealt with a factual situation remarkably like that now before us.

Here as in *Draper* the reliability of the basic information of the police was demonstrated before the arrest by their observations of the narcotics couriers matching the physical and sartorial descriptions given by the informant, arriving on the particular public conveyance as predicted; added to that, one of the couriers in the present case was

---

1. The language in *Aguilar* relied on by the dissent was not intended to be a formulation of a fixed rule of law to be applied literally, as though it were a statute, to all probable cause cases, as is emphasized by the narrowness of the Supreme Court's language in terms of the specific facts before the Court: the magistrate must be told some of the informant's reasons for concluding that *"the narcotics* were where he claimed they were * * *."* (Emphasis added.)

known to the arresting officer by the name received from the informant, and the officer recognized the other by sight. The only element remaining unverified before the arrest was the presence of the narcotics; of course, we do not rely on what the search revealed. Even though the informant had not told Lozowicki how he came to know that Smitty would be carrying narcotics, his history of reliability, the fulfillment of his other predictions, and Thompson's knowledge of both Smitty and Ollie Jones gave the agents reasonable ground to believe that the prediction as to the narcotics would also be fulfilled, and hence probable cause to arrest. As we have often observed, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the "laminated" total. It has often been repeated, but it bears repetition, that "In dealing with probable cause, * * * as the very name implies, we deal with *probabilities*. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, *supra* 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. 1879. (Emphasis added.)

The dissenting opinion undertakes to distinguish the present case from *Draper* by emphasizing that there the informant had been one of the Government's "special employees" for the narcotics bureau. There are always some factual differences in cases, but the factual differences between the present case and *Draper* afford firmer grounds for belief that Smith was carrying narcotics than was true as to Draper. The informant here had supplied information to the Bureau of Narcotics for a much longer period

than the six months in *Draper*. Moreover, the information in *Draper* was that the suspect was going to go to Chicago to obtain narcotics, which he would carry back to Denver; here, by contrast, the informant called from New York, the source of the narcotics, to say that Smith already had narcotics and was enroute to Washington. The dissent points out that "the informant [in *Draper*] gave police information on the whereabouts and criminal activities of the suspect four days before the information which led to the arrest." The minute description in the present case of Smith and Ollie Jones, who were traveling on the same bus, and who had both been identified previously by others as connected with illegal narcotics, supplies far more probability that the informant's information is correct than did the single previous report on the activities of the suspect in *Draper*.

■ Finally, the dissent says that "*Draper* is necessarily modified to the extent that it is inconsistent with the specific requirements for 'probable cause' laid down later in *Aguilar*." This truism can hardly bear much weight when we observe that the Supreme Court continues to cite *Draper* without intimating that it has been modified. In light of this we can only conclude that *Aguilar's* "specific" rules were not intended to exhaust all the possible ways of using hearsay information as part of the basis for probable cause and indeed were not aimed at situations like those in *Draper* and the present case.[2]

■ Finally, Appellant contends that the trial court erred in refusing to compel disclosure of the Government's informant at the hearing on the motion to suppress. Under the circumstances of this case, where before the arrest officers made first hand observations tending strongly to support the informant's relia-

2. Perry v. United States, 118 U.S.App. D.C. 360, 336 F.2d 748 (1964), cited by the dissent, is not in point; there reversal was based on the trial court's undue restriction on defense questioning seeking to undermine the police conclusion that their informant was reliable. Thus,

*Perry* held merely that police knowledge of the "underlying circumstances from which the informant concluded that the narcotics were where he claimed they were" was *relevant* to the question of probable cause, not that it was *requisite*.

bility, the claim for disclosure is clearly precluded. Walker v. United States, 117 U.S.App.D.C. 151, 153 n. 4, 327 F.2d 597, 599 n. 4 (1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964); *Anderson Jones*, supra, 106 U.S. App.D.C. at 230 n. 3, 271 F.2d at 496 n. 3; cf. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). See also Buford v. United States, 308 F.2d 804 (5th Cir. 1962).

Affirmed.

BAZELON, Chief Judge (dissenting):

I think appellant's conviction for unlawful possession of narcotics must be reversed because the trial court erred in admitting evidence of narcotics seized from appellant incident to an unlawful arrest. I agree with the majority that the validity of an arrest should be evaluated upon the collective information of the narcotics agents, but I think the combined knowledge of both narcotics agents is insufficient for a valid arrest.

Agent Lozowicki testified that on July 31, 1964, he received a telephone call in Baltimore from an unidentified informant in New York. The informant told him that "Alias Smitty" and Ollie Jones had just boarded a Trailways bus en route from New York to Washington, and that "Smitty" possessed one ounce of heroin, and Jones some cocaine. The informant described "Smitty" as a Negro, approximately six feet tall, about thirty years old, wearing a checkered maroon sports shirt and eyeglasses. Lozowicki knew several men called "Smitty" in the Washington area, but he did not know which one the informant had in mind. Lozowicki further testified that, although the informant had given him reliable information in Baltimore in the past, no arrests had ever been

made thereon; that previous correspondence in the files showed, however, that arrests had been made in Europe on information given by the informant seven or eight years ago. There is no evidence that Lozowicki knew any of the underlying circumstances which led the informant to believe that "Smitty" carried narcotics. Lozowicki testified that he had no idea what the informant "was doing in New York."

After ascertaining from the bus company that the bus in question would not stop before reaching Washington, Agent Lozowicki telephoned Agent Thompson in Washington, telling him he had just received a call from "an informant of his" in New York and relaying to him the information he had received. Thompson testified, like Lozowicki, that "he knew several suspected violators in Washington by the name of 'Smitty'," but did not know whether this suspect was one of them. Without making any attempt to obtain warrants for the arrest of "Smitty" or Jones, Thompson proceeded to the Trailways bus terminal in Washington with several agents. At about 4:40 a. m., two men meeting the descriptions given by the informant got off the New York bus. One of them was appellant Smith, alias "Smitty." Agent Thompson stated that he then recognized appellant as a person who had once been pointed out to him as a narcotics suspect by an informant of unspecified reliability. Appellant and Jones were promptly arrested and searched, and narcotics recovered from appellant's pants pocket.

The government has the burden of showing that a warrantless arrest was valid.[1] To obtain a search warrant based on hearsay information:

[T]he magistrate must be informed of [1] *some of the underlying circumstances from which the inform-*

---

1. Beck v. State of Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); see Wrightson v. United States, 95 U.S. App.D.C. 390, 392, 222 F.2d 556, 558 (1955): "Courts cannot put a stamp of

approval upon actions of the police when the officers, challenged by an accused, fail or refuse to demonstrate compliance with the rules which circumscribe their authority."

*ant concluded that the narcotics were where he claimed they were,* and [2] some of the underlying circumstances from which the officer concluded that the informant * * was "credible" or his information "reliable." [Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), emphasis supplied.]

The constitutional standards for probable cause apply to arrest as well as search warrants.[2] And probable cause must more clearly appear when the determination is made by a policeman rather than by a detached magistrate.[3] Probable cause is not shown by a policeman's "suspicion" or "mere conclusion" that narcotics are in someone's possession.[4] And if such mere surmise is conveyed to another policeman, he cannot rely upon it because the first policeman is a "credible person."[5] Nor can he rely on it, of course, if the "credible person" is not a policeman.[6]

A description of the suspect's appearance or whereabouts may support identification, but cannot support a belief that a crime has been or is being committed.[7] Nor is the deficiency supplied by the policeman's recognition of appellant as a "narcotics suspect." As the Supreme Court stated in Beck v. State of Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 228 (1964):

> We do not hold that the officer's knowledge of the petitioner's physical appearance and previous record was either inadmissible or entirely irrelevant upon the issue of probable cause. * * * But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.[8]

The majority relies primarily on Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). But that case is distinguishable. There the facts known to the police might reasonably have indicated that the identified informant had followed the course of the

---

2. See, e. g., Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223 (1964); Perry v. United States, 118 U.S.App.D.C. 360, 361, 336 F.2d 748, 749 (1964).

3. "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228 (1964). See also Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

4. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725 (1959); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

5. Aguilar v. State of Texas, *supra* note 4, at 378 U.S. 114 n. 4, 84 S.Ct. 1509.

6. Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725 (1959).

7. "Whether [the] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner *had committed or was committing an offense.*" Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1946), emphasis supplied.
See Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

8. Recognition of appellant as a "suspect" who was "pointed out" by an unidentified informant of unspecified reliability is even weaker evidence of probable cause than knowledge of a previous criminal record in *Beck, supra* note 7.

suspect's activities. For six months the informant had been a "special employee" of the Narcotics Bureau in Denver, where the alleged criminal activities occurred; and the informant gave police information on the whereabouts and criminal activities of the suspect four days before the information which led to the arrest. Here Lozowicki testified he had no idea what the informant was "doing in New York," and the informant gave no description of appellant's activities over a period of time from which the police could infer a course of surveillance. Moreover, *Draper* is necessarily modified to the extent that it is inconsistent with the specific requirements for "probable cause" laid down later in *Aguilar*.

The majority also distinguishes *Aguilar* from the present case because it involved the search of a *dwelling*. But this court has applied the *Aguilar* requirements to a street arrest. Perry v. United States, 118 U.S.App.D.C. 360, 336 F.2d 748 (1946). Although we said in a later case that a warrant need not be obtained for a street arrest, even where practicable, we did not relax the requirements of "probable cause." Ford & Kimble v. United States, 122 U.S. App.D.C. ——, 352 F.2d 927 (1965) (*en banc*). "In a doubtful or marginal case of probable cause an arrest may be sustainable on a warrant where without one it would fall." Ford & Kimble, *supra* 352 F.2d at 933.

Since there is no evidence in the present case that the police knew any of the underlying circumstances for the informant's belief that the appellant was carrying narcotics,[9] his arrest was illegal. It follows that the trial court erred in denying the motion to suppress the narcotics seized incident to that arrest.

9. "It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's arrest. But when the constitutional validity of that arrest was challenged, it was incumbent

upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said * * *." Beck v. State of Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964).