577 F.2d 1147
 UNITED STATES of America, Appellee,
v.
Allen Ray BAKER, Appellant.
UNITED STATES of America, Appellee,
v.
Norman WEINSTEIN, Appellant.
 Nos. 77-1233, 77-1234.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1978.
Decided May 25, 1978.
 
 Roland Walker, Baltimore, Md. (Walker & McCadden, Baltimore, Md., on brief), for appellant in 77-1233.
 James J. Gitomer, Baltimore, Md., for appellant in 77-1234.
 Richard D. Bennett, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty. and Robert B. Schulman, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee in 77-1233 and 77-1234.
 Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The appellants Baker and Weinstein were indicted, along with three other individuals, in a series of related indictments charging conspiracy to manufacture and distribute, distribution and possession with intent to distribute, and aiding and abetting in the manufacture, of Phencyclidine, in violation of §§ 846 and 841(a)(1), 21 U.S.C. and § 2, 18 U.S.C. All the indicted were convicted, the appellant Baker after a trial on an agreed statement of facts before the judge and the appellant Weinstein after a jury trial. Only the appellants Baker and Weinstein appeal their convictions. The appellant Baker challenges the validity of his warrantless arrest in front of his house and the search of his house after his arrest. Weinstein asserts error in the limitations placed by the trial court on his cross-examination of a critical Government witness and on the closing jury argument of his counsel. We find all claims of error without merit and affirm the convictions.I.
 
 
 2
 The appellant Baker relies primarily on the claim that the District Court erred in finding that the arrests of Baker and Miranda in the early hours of the morning of July 2, 1976, as the two were transporting from Baker's home to the car of Miranda's wife two large plastic bags containing Phencyclidine, were based on probable cause. In support of this claim of error, he would isolate certain circumstances, which he argues may not support the finding of probable cause. First, he would find the use, however slight, of an informer's tip by the arresting authorities in determining probable cause violative of the requirements established by Aguilar[1] and Spinelli.[2]
 
 
 3
 Aguilar and Spinelli are generally considered as establishing a two-pronged test for acceptance of an informer's tip as a basis for a finding of probable cause. These two requisites are (1) sufficient information with reference to the reliability of the informer so as "to negate the possibility that the informer 'fabricat(ed) his report out of the whole cloth' "[3] and (2) sufficient information with reference to the dependability of the informer's information to enable the arresting officers or magistrate to " 'know that (they are) relying on something more substantial than a casual rumor.' "[4] Dicta in a number of recent cases, however, would confine the first requirement of the rule to cases involving the tip of the professional informer.[5] Indeed, a commentator, reviewing Spinelli shortly after its issuance, seems to have construed this requirement as owing its basis to the feeling that there was a "substantial risk that a paid informant's story is inaccurate."[6] (Emphasis added) Accordingly, several decisions have suggested that a showing of an informer's prior reliability is not required for the disinterested informer, without a previous record as such and without any criminal involvement.[7] Moreover, there is authority for the view that the rule in Aguilar-Spinelli is a relevant requirement only in cases where the finding of probable cause rests entirely on the informer's tip.[8]
 
 
 4
 Under all the authorities, however, if the information detailed in the tip is verified or corroborated by other facts developed or acquired in the course of the arresting officer's investigation prior to arrest, which may be said to have "not only attested to the reliability of the informant but (also to have) supported the conclusion that his information had a reasonably substantial basis in fact,"[9] the information supplied by the tip may be a proper basis for a finding of probable cause.[10] The District Court found that there was such verification in this case.
 
 
 5
 The corroboration of the disinterested citizen's tip was considerable and to the point. Thus, the informant had said that Miranda was manufacturing Phencyclidine with one "Al." He did not know, it is true, "Al's" last name but he did identify "Al" as a person who drove a gray Corvette, model 1976, and who lived in Westminster, Maryland. Already the investigating officers knew that Miranda was a known manufacturer and vendor of Phencyclidine and had within the last few days received a shipment of materials required for the manufacture of Phencyclidine under suspicious circumstances. While trying to locate a 1976 gray Corvette in Westminster, Maryland, the officers had come upon the wife of Miranda in the Westminster area, had followed her, and had seen her stop at a house in an area adjacent to Westminster. Significantly, there was a 1976 gray Corvette parked in the driveway of the house. Investigation revealed that the appellant Allen Ray Baker owned the Corvette and lived at the residence. Inquiry of neighbors developed that Miranda had been a frequent visitor at the Baker house recently. These confirming facts were sufficient to support the determination of the District Court in favor of the credibility of the informer and of the dependability of his information against any claim of clear error.
 
 
 6
 But even if it be assumed that the informer's tip was not properly corroborated, it still would not follow that the tip could not be considered in resolving probable cause to arrest. The existence of probable cause to arrest is not to be determined by isolating, as the appellant has sought to do, the several factors known to the arresting officers but by a careful analysis of all the facts known at the time by them. As Chief Justice (then Judge) Burger stated in Smith v. United States (1966) 123 U.S.App.D.C. 202, 206, 358 F.2d 833, 837, cert. denied 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448:
 
 
 7
 "* * * As we have often observed, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total."
 
 
 8
 In line with this language, the court in United States v. Prince (6th Cir. 1977) 548 F.2d 164, 165-6 upheld consideration of an informer's tip on the determination of probable cause to arrest, although "the unreliable informer's tip received was neither corroborated nor possible of corroboration," saying:"* * * However, although the tip by itself was insufficient to establish probable cause, the tip was not so insubstantial that it could not properly have been considered as one factor in a determination of probable cause."[11]
 
 
 9
 While, as we have said, we do not think the District Court erred in finding that the tip was sufficiently corroborated, still, if it did, the other evidence in the possession of the arresting officers, taken along with the informer's tip, could have been considered by the District Court in its ruling and was sufficient to withstand a challenge of clear error.
 
 
 10
 Neither is there merit in the second claim of Baker which was that the search of his house, in front of which he and Miranda were arrested, was invalid. The officers were in possession of information received from the appellant's neighbors that Miranda had been seen at the house the day before armed. Moreover, they had knowledge of a confederate of Miranda in the narcotics business. This confederate had been seen either by the officers or by an informer with Miranda on the day before the arrest. The officers feared, according to their claim, that there might be an armed accomplice in the house who, observing the arrest of the appellant and Miranda, would fire on them. Under the circumstances, that was a reasonable fear justifying a "protective sweep" of the house. United States v. Sellers (4th Cir. 1975) 520 F.2d 1281, 1284, vacated on other grounds, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728, cert. denied and reh. denied 425 U.S. 955, 96 S.Ct. 1734, 48 L.Ed.2d 200; United States v. Bowdach (S.D.Fla.1976) 414 F.Supp. 1346, 1352-1353, aff'd (5th Cir.) 561 F.2d 1160.[12] In the course of that "protective sweep" the officers had the right to seize any evidence of crime in plain view. United States v. Sellars, supra, 520 F.2d at 1284-1285; United States v. Zapata (7th Cir. 1976) 535 F.2d 358, 359; United States v. Looney (5th Cir. 1973) 481 F.2d 31, 34, cert. denied 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476.
 
 II
 
 11
 The appellant Weinstein bases his objections to the trial below on two rulings by the trial court, one of which related to the cross-examination by Weinstein of his co-defendant Miranda, and the other to a ruling by the Court made during the course of the jury argument of Weinstein's counsel. Both rulings fell within the discretionary power of the trial court and were not clearly erroneous. Even if the rulings had been unduly restrictive of either the cross-examination or the closing argument, any error in them would have been harmless.
 
 
 12
 For the foregoing reasons, the convictions of the appellants are
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Aguilar v. Texas (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
 
 
 [2]
 Spinelli v. United States (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
 
 
 [3]
 Weeks v. Estelle (5th Cir. 1976) 531 F.2d 780, 783, quoting from Gonzales v. Beto (5th Cir. 1970) 425 F.2d 963, 969, cert. denied 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189
 
 
 [4]
 United States v. Toral (9th Cir. 1976) 536 F.2d 893, 895, quoting from Spinelli
 
 
 [5]
 See cases listed in note 7
 
 
 [6]
 Note, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 62 at 181 (1969):
 "* * * In view of the substantial risk that paid informant's story is inaccurate, if not false, it is not too much to expect that he might also falsify a claim to have personally observed the criminal activity (thus satisfying the second Aguilar requirement). An appropriate extension of Aguilar, then, would be to require independent corroboration of a part of the informant's story where the authorities have provided a benefit of some kind to the informant in exchange for his information. In contrast to Draper, * the corroborated part should justify an inference not simply that the informant is not a total liar but also that criminal activity may actually be present. Thus a hired informant's tip would never be allowed to constitute the sole item establishing probable cause to arrest or search."
 
 
 *
 Draper v. United States (1959) 358 U.S. 307
 
 
 [7]
 See, United States v. Banks (9th Cir. 1976) 539 F.2d 14, 17, n. 5, cert. denied 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626; United States v. Darensbourg (5th Cir. 1975) 520 F.2d 985, 988, modified on other grounds, 524 F.2d 233; United States v. Burke (2d Cir. 1975) 517 F.2d 377, 380
 For a statement of the reasons supporting this view, see, Note, The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3 at 63, n. 55:
 "The Harris plurality's willingness to modify the Aguilar-Spinelli requirement of proof of the informer's credibility may be a tacit response to the government's argument that the requirement imposes too great a burden on the police where the information has been provided by first-time informers, who allegedly are often required to solve many crimes. * * * In such cases, evidence of the informer's prior reliability would be nonexistent and the police might well be reluctant to provide a general background sketch of the informant as suggested by Justice Harlan in dissent, 403 U.S. at 600, for fear that subsequent disclosure in a suppression hearing might jeopardize his life by providing leads to his identity. * * *
 "Nonetheless, requiring some information about a first-time informant seems workable if he is a typical law-abiding citizen who inadvertently discovers criminal activity, but is reluctant to become personally identified with the subsequent investigation. Since such informants are less likely to be known to defendants and since their background is more conducive to a finding that they are credible, the quantum of information required might be small enough so as not to risk disclosure. For example, in cases where the informant is employed, lacks a police history, and appears to have no prior relationship with the suspects which might give a motive to lie or exaggerate, such information might be given to the magistrate without much danger.
 "This problem is, of course, more severe when first-time informers with criminal associations are involved. Yet the government's admission that such informers are often unreliable provides the answer to its argument. Such tips must be viewed skeptically and, without independent corroboration by the police, should be insufficient to justify issuance of a warrant. * * *"
 
 
 [8]
 United States v. Canieso (2d Cir. 1972) 470 F.2d 1224, 1231. In speaking for the Court in that case, Judge Friendly said:
 "The lesson we draw from all this is that Aguilar applies with full rigor only when the search warrant or the arrest depends solely on the informer's tip. When a tip not meeting the Aguilar test has generated police investigation and this has developed significant corroboration or other 'probative indications of criminal activity along the lines suggested by the informant,' see Rebell, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703, 715 (1972), the tip, even though not qualifying under Aguilar, may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause." (Emphasis in text)
 
 
 [9]
 United States v. Branch (4th Cir. 1977) 565 F.2d 274, 276. See, also, United States v. Jackson (9th Cir. 1976) 544 F.2d 407, 410, 8A Moore on Federal Practice, P 41,04(2), p. 41-30
 In Branch, we put it (565 F.2d at 276):
 "* * * the variety of facts which were verified by the police not only attested to the reliability of the informant but supported the conclusion that his information had a reasonable substantial basis in fact * * * ."
 In Jackson, the Court said at 410:
 "The informant here was untested so there was no previous experience to qualify her. Prior dealing is not the only basis for establishing reliability, however. We may consider the underlying circumstances, including those portions of the information verified by the police, and other factors supporting the informant's reliability and the probable truthfulness of the information given. * * *"
 
 
 [10]
 There is some contrariety in the decisions on whether the corroborating facts may be "innocent facts" conforming to the information in the tip or must be facts which "relate directly to the criminal activity." See United States v. Brennan (5th Cir. 1976) 538 F.2d 711, 720, n. 11, cert. denied 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538. In a long line of cases, the Second Circuit has repeatedly upheld a finding of probable cause based on an untested informer's tip when corroborated by "innocent details." United States v. Jackson (2d Cir. 1977) 560 F.2d 112, 121, cert. denied 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301; United States v. Gonzalez (2d Cir. 1977) 555 F.2d 308, 313 ("corroboration of even innocent elements is enough"); United States v. Rollins (2d Cir. 1975) 522 F.2d 160, 165, cert. denied 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 ("We reject appellant's contention that corroboration must directly link the suspect to the commission of the crime"); United States v. Sultan (2d Cir. 1972) 463 F.2d 1066, 1069 ("an untested informant's story may be corroborated by other facts that become known to the affiant, even if they corroborate only innocent aspects of the story"). Moreover, as the Court in United States v. Edmond (6th Cir. 1977) 548 F.2d 1256, 1258-9, cert. denied 433 U.S. 912, 97 S.Ct. 2983, 53 L.Ed.2d 1097, suggests, the corroborating details in Draper v. United States (1959) 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327, were not facts which directly linked the suspect to the crime. The same was, also, true of Jones v. United States (1960) 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697. Other cases in which "innocent details" were found to be sufficient corroboration are United States v. Edmond, supra, 548 F.2d 1256; United States v. Prueitt (9th Cir. 1976) 540 F.2d 995, 1005, cert. denied 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780; Weeks v. Estelle (5th Cir. 1976) 531 F.2d 780, 783. See, also, Kipps v. Ewell (4th Cir. 1976) 538 F.2d 564, 566, and United States v. Cutting (7th Cir. 1977) 552 F.2d 761, 767, cert. denied 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083
 The leading case requiring a stricter standard is United States v. Larkin (9th Cir. 1974) 510 F.2d 13 at 15. It has been followed in a number of cases in the Sixth Circuit, of which the latest is United States v. Craemer (6th Cir. 1977) 555 F.2d 594, 597. However, it has been suggested that these cases really go off on the extent of the corroboration more than on the nature of the corroboration. United States v. Montgomery (5th Cir. 1977) 554 F.2d 754, 757-8, cert. denied 434 U.S. 941, 98 S.Ct. 409, 54 L.Ed.2d 285. And this seems confirmed by the opinion in Larkin. In distinguishing United States v. Archuleta (9th Cir. 1971) 446 F.2d 518 and Draper (both of which found corroboration on "innocent details" in the tip sufficient), the opinion in Larkin states that in such cases the informer "supplied such a wealth of detail that a magistrate would have been justified in concluding that the informant was 'relying on something more substantial than a casual rumor' * * * ." This is little more than the rule as stated in United States v. Tuley (5th Cir. 1977) 546 F.2d 1264, 1268, where reliance on the tip was found proper because corroborated by " 'an accumulation of innocent detail conforming to the original tip.' " (Quoting from United States v. Brennan, supra, 538 F.2d at 720.)
 In any event, the corroboration in this case could meet either test. As we later point out, the information that Miranda was manufacturing Phencyclidine at Al's (Baker's) house in Westminster, Maryland was supported by proof that within the last day or two Miranda, a well known manufacturer of illicit Phencyclidine, had obtained under a fictitious name and from a planted address, material for such manufacture, and that Miranda had been seen frequenting Al's house near Westminster during the same time frame.
 
 
 [11]
 See, also, United States v. Waddy (5th Cir. 1976) 536 F.2d 632, 634; United States v. McNally (3d Cir. 1973) 473 F.2d 934, 938-939
 
 
 [12]
 The Government made no effort to justify the search under the rule in Roaden v. Kentucky (1973) 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757:
 "* * * Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation."
 See, also, United States v. Shima (5th Cir. 1977) 545 F.2d 1026, 1028, aff'd en banc 560 F.2d 1287; United States v. Delguyd (6th Cir. 1976) 542 F.2d 346, 351.