**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ervin L. ABERCROMBIE, Defendant-Appellant.**

**No. 73–1181.**

United States Court of Appeals, Fifth Circuit.

July 17, 1973.

A. Pope Gordon, Montgomery, Ala., court-appointed, for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

On April 21, 1972, three black men entered the Western Branch of the First National Bank of Montgomery, Alabama, and stood in front of the teller's window which was occupied by Mrs. Nelma Ausley. The man first in line was Tommy Matthews, wearing a "French beret". Next to and behind him was Ervin L. Abercrombie, wearing a distinctive white hat. The third man was Earnest Jones, Jr.

Matthews asked the teller for some coin wrappers. Not having any at the moment the teller went to another cage for the quarter wrappers and to the store room for the dime wrappers. While in the supply room she noticed that the alarm system had been activated. Not knowing the cause of it, she called it to the attention of the Branch Manager and returned to her window, where she discovered that the three men were gone.

Since there was no robbery in progress a quick search was made to find out what had activated the alarm. The Branch Manager soon noticed that the

drawer in Mrs. Ausley's cage was about half open and $500 in "bait money" was missing. The removal of this money bundle activated the alarm, as well as the surveillance camera. The camera did not photograph the actual money snatching but it did take pictures of the men leaving the bank, including what appeared to be Matthews in the act of handing something to Abercrombie. The men were seen hurriedly leaving the parking lot by way of the automobile entrance rather than by the exit. Eight hundred and forty dollars had been taken from the teller's drawer.

About two weeks later the F.B.I. arrested Matthews and Jones in Birmingham. On May 3 Abercrombie called in and announced that he would surrender the next day, which he did. Abercrombie thereafter signed a confession that he went into the bank with the other two men to change coins for bills, that he heard Matthews ask for the wrappers, saw the lady leave for them, and the next thing he knew was that Matthews turned away and started to walk out of the bank. A few minutes after leaving the bank in an automobile Matthews handed him a handful of twenty dollar bills and told him to divide it three ways. His share came to $280, one third of the missing $840.

This resulted in the following indictment:

"The Grand Jury charges:

### COUNT I

"On or about the 21st day of April, 1972, at Montgomery, Alabama, in the Middle District of Alabama, TOMMY MATTHEWS, ERVIN L. ABERCROMBIE, and EARNEST JONES, JR., willfully and unlawfully did take and carry away with intent to steal and purloin from the Western Branch of the First National Bank of Montgomery, Alabama, the deposits of which were then insured by the Federal Deposit Insurance Corporation, certain money aggregating $840.00 belonging to the bank, in violation of Title 18, Section 2113(b), United States Code.

### COUNT II

"On or about the 21st day of April, 1972, at Montgomery, Alabama, in the Middle District of Alabama, TOMMY MATTHEWS, ERVIN L. ABERCROMBIE, and EARNEST JONES, JR., willfully and unlawfully did possess the sum of $280.00 which had been taken and carried away with intent to steal and purloin from the Western Branch of the First National Bank of Montgomery, Alabama, the deposits of which were insured by the Federal Deposit Insurance Corporation and TOMMY MATTHEWS, ERVIN L. ABERCROMBIE, and EARNEST JONES, JR., then knew said money to have been so taken, in violation of Title 18, Section 2113(c), United States Code."

The day before the case was scheduled to go to trial, Matthews and Jones withdrew their pleas of not guilty and entered pleas of guilty, which resulted in a general sentence of five years each.

Represented by retained counsel, Abercrombie went to trial with no objections to the indictment. At the close of the trial, again without objection, the Court instructed the jury that it might convict or acquit on either or both counts of the indictment.

Court appointed appellate counsel challenges the conviction on three grounds.

■ First, it is said that the trial court erred in denying a continuance requested by the defendant pro se after his counsel had announced ready for trial. We find no abuse of discretion in this action.

Next, it is argued that Abercrombie's *Miranda* warnings were inadequate. This contention is foreclosed by the decision of this Court in United States v. Lacy, 5 Cir., 1971, 446 F.2d 511.

■ Lastly, it is asserted, and we think correctly, that it was plain error

to allow a conviction on two counts which embraced both the theft and the possession of the same money, §§ 2113(b) and 2113(c), 18 United States Code.

Section 2113 reads as follows:

§ 2113. Bank robbery and incidental crimes

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker.

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

(f) As used in this section the term "bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

(g) As used in this section the term "savings and loan association" means any Federal savings and loan association and any "insured institution" as defined in section 401 of the National Housing Act, as amended, and any "Federal credit union" as defined in section 2 of the Federal Credit Union Act.

As to Abercrombie's third contention the judicial highway is well marked and lighted. The Supreme Court pointed the way in Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, a case which arose in this Circuit and in which the judgment of this Court [251 F.2d 69] was as to one defendant reversed. It was held that a defendant could not be lawfully convicted under the Bank Robbery Act [18 U.S.C. § 2113(c), d)] for feloniously receiving and for feloniously taking the same property.

With reference to another statute [18 U.S.C. § 641] the Supreme Court reiterated in Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773, that a thief cannot be convicted of receiving from himself; that the omission of a sentence on a receiving count did not cure any prejudice resulting from the failure of the Court to instruct the jury that it could convict of either stealing or receiving but not of both.

In Forrester v. United States, 5 Cir., 1972, 456 F.2d 905, we held that Section (c) stated a separate, distinct, and incompatible offense to those denounced in the other sections of the full Section 2113, that unlawfully taking money and receiving the same money contemplate separate individuals performing entirely different roles, quoting United States v. White, 5 Cir., 1971, 440 F.2d 978.

On appeal, the government concedes all this, as it must, but argues that the charge in Count II of the Abercrombie indictment was that Abercrombie *did possess* [not receive] the sum of $280 which had been "taken and carried away with intent to steal and purloin". This, says the government, may be distinguished from "receiving" and that the defendant could be convicted of both taking and possessing. We are compelled to reject this argument. Count I charged that Abercrombie "did take and carry away with intent to steal and purloin" the same money of which the $280 was an integral part. As a matter of reason and everyday common knowledge

before Abercrombie, or the person he was aiding and abetting, could take the money and carry it away he had to reduce that same money to possession; otherwise, he could not have left the bank with it. As a transitive verb, "receiving" means to take or get something, to acquire or accept, Webster's New World Dictionary. If the alleged offenses are charged to the same person, possession cannot be separated from taking and neither can carrying away be separated from possession.

In the context of the cited cases, then, it was error under the facts of this case for the jury to have been instructed that it could convict Abercrombie of both taking and possessing the same money obtained in the same theft. Moreover, the prejudice was not cured by the imposition of a general sentence for a term within the limits applicable to only one of the counts, *Milanovich, supra*; United States v. Suel, 5 Cir., 1970, 435 F.2d 1272.

An important appellate feature of the case, however, is that nowhere below did the defendant, represented by retained counsel, raise any objection. Not until other counsel took over the appeal was the contention presented. The conviction, therefore, is not due to be reversed unless necessitated by the doctrine of plain error. In weighing the application of that doctrine to this case we must note that the only overt act from which the jury might infer the guilt of Abercrombie in the taking was that in the consummation of the theft the bank surveillance camera depicted Matthews, the principal thief, in the act of handing something to Abercrombie. Abercrombie, however, stated in his confession that the money was not given him until they were out on the highway, when Matthews handed him the money and told him to divide it, which was done. Moreover, the only proof of Abercrombie's possession came from his confession, although the confession was in many other particulars corroborated by other proof. As we read it, the record is devoid of proof that Abercrombie

knew before the trio entered the bank that Matthews was to snatch money from a cash drawer when the cashier went elsewhere for the coin wrappers. Indeed, the lady would ordinarily have had the wrappers at her station and would not have found it necessary to go elsewhere to get them, affording Matthews the chance to snatch the money.

In any event, Thomas v. United States, 5 Cir., 1969, 418 F.2d 567, we expressly held that it was plain error not to charge that the defendant could be convicted of robbery or receiving but not of both.

Reversed and remanded.