**UNITED STATES of America,
Appellee,**

v.

**Willie Foster SELLERS, Appellant.**

**No. 74–1683.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 6, 1975.

Decided April 10, 1975.

As Amended May 20, 1975.

Robert B. Thompson, Gainesville, Ga. [Court-appointed counsel], for appellant.

Jimmie C. Proctor, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee.

Before CLARK, Supreme Court Justice *, HAYNSWORTH, Chief Judge, and WINTER, Circuit Judge.

Mr. Justice CLARK:

The appellant, Willie Foster Sellers, stands convicted by a jury on four counts of armed robbery of the Fallston branch of the Union Trust Company of Shelby, N. C., on August 9, 1973. He raises three claims of error: (1) the FBI's search of his apartment violated his Fourth Amendment rights; (2) the failure of his attorney to subpoena several witnesses violated his Sixth Amendment rights; and (3) his conviction for both theft and possession of stolen money was improper. We discuss these issues seriatim.

I.

At the trial, a variety of evidence linked appellant to the bank robbery. Testimony revealed that on the night of August 8, 1973, a blue Ford automobile was stolen from the parking lot in front of the Cloud Nine Lounge in Charlotte, N. C. A policeman on routine patrol duty happened to notice the car being driven off and later identified Sellers as one of the passengers. The next day, two armed men wearing ski masks robbed the Union Trust in Fallston of nearly $63,000 including a quantity of marked bills known as "bait money." Though none could identify the robbers, one witness to the theft saw the men make a getaway in the blue Ford, later found abandoned about a mile from the bank. Earlier in the day, according to other testimony, two witnesses had seen Sellers riding in the car in the vicinity of Fallston.

The most incriminating evidence, however, came from a warrant search of appellant's apartment in Atlanta, Georgia, following his arrest on September 25, 1973. There, tucked in a shoebox containing $33,150 in cash, agents found $500 of the "bait money" from the Fallston bank. In a pre-trial motion to suppress this crucial piece of evidence, Sellers attacked the affidavit supporting the warrant as lacking probable cause, but the district court rejected the claim. On appeal, he renews his attack, but we also must reject it.

■ In the circumstances of this case, the warrant must stand or fall on the basis of the · written affidavit.[1] We therefore set out the entire document:

I, Michael J. Santimauro, being duly sworn, depose and on oath say the following:

On or about January 17, 1973, a confidential source advised Special Agent Raymond W. Stratton of the Chicago Office, Federal Bureau of Investigation, that Willie Foster Sellers was a known member and/or associate of the "McGuire Gang", headquartered in Chicago, which have been committing bank robbery offenses in the Southeastern United States, including Ala-

* Sitting by Designation.

1. At the suppression hearing, the Government sought to bolster the affidavit by the testimony of the issuing magistrate regarding matters discussed between himself and the FBI agent seeking the warrant. These matters were neither sworn to nor recorded as required by Fed. R.Crim.P. 41(c) and must therefore be disregarded. See United States v. Acosta, 501 F.2d 1330 (5th Cir. 1974), reconsidered en banc 509 F.2d 539 (5th Cir., filed March 7, 1975) (Judgment of the trial court admitting such evidence affirmed by an evenly divided court).

bama, Georgia, Tennessee, and the Carolinas, in which handguns, sawed-off shotguns and machine guns were used. The modus operandi utilized was that the participants always used facial disguises such as ski masks, costume face masks, hoods, and are completely clothed from head to toe. They steal cars for the getaway and for the "switch" car, usually the day before the robbery from a public parking lot such as a shopping center and/or hospital. After the robbery they hide in the woods and are subsequently picked up by another member in a "cool" car.

On September 23, 1973, a confidential source advised Special Agent Lee R. Wagner that Willie Foster Sellers had committed a recent number of bank robbery offenses in the South, particularly Georgia and South Carolina, stating he was utilizing ski masks, facial and costume masks and utilizing the same modus operandi as set out above. This source advised that Sellers and his accomplices were responsible for a recent bank robbery in Northern Georgia in which the bank camera was sprayed with paint.

On June 22, 1973, the Citizens Bank, Ball Ground, Georgia, was robbed by three white males armed with carbine and pistols, all wearing ski masks and similar type clothing with getaway made in a stolen automobile and abandoned in a wooded area within a five-mile radius of the bank. The modus operandi and the description of the unknown subjects fit the general description of Sellers and the two accomplices named by the source.

On September 25, 1973, at 7:30 A. M., I participated in the arrest of Willie Foster Sellers based on a federal warrant charging him with unlawful flight to avoid confinement—burglary and escape—issued May 21, 1971, Southern District of Alabama. Sellers was arrested outside his apartment. Information received on September 23, 1973, was such that he was traveling with other armed accomplices. The

Apartment G–10 was entered in an effort to locate these individuals. In the bedroom I observed in plain view one costume type mask and brown gloves, similar to those used in the Citizens Bank robbery. In the same room, also in plain view, in an open drawer of a night stand was a loaded revolver. Various trunks, grips and packages were also observed in the apartment which are believed to contain further bank robbery paraphernalia. Upon arrest Sellers was in the process of placing some of the above trunks and luggage in the above described vehicle. The keys to this vehicle were in the possession of both Sellers and his wife, Barbara.

Review of FBI identification records shows that on three separate occasions Sellers had been convicted and sentenced on charges of burglary.

■ Appellant first seeks to undercut the affidavit by stripping away the corroborating detail contained in the next-to-the-last paragraph regarding the mask, gun, and gloves observed in appellant's bedroom. Sellers' theory is that the warrantless entry of the apartment immediately after his arrest was itself a Fourth Amendment violation and could not be used to support probable cause. The Government defends the search under the so-called "protective sweep" theory. The relevant facts are these.

In late September of 1973, the FBI received a report from an unidentified informant that Sellers, who was a suspect in several bank robberies and a fugitive from confinement, could be found in Apartment G–10 of the Buford Towne Apartments in a suburb of Atlanta. This was corroborated through the apartment manager who identified a photograph of appellant but advised that he was not then at the apartment. On the evening of September 24th, the manager contacted the FBI and notified them that Sellers had returned. Setting up surveillance around the apartment building, the agents waited for Sellers to appear.

Early on the morning of September 25th, a light came on and, at about 7:30 A. M., Sellers left the building and walked to his car, which he began to load with luggage. As he closed the car trunk, he was arrested on an unlawful flight warrant. Simultaneously, several of the agents rushed up the stairs to Sellers' second floor apartment, which overlooked the parking lot directly above where appellant's car was parked. According to their testimony, the agents feared that armed accomplices, who had reportedly been travelling with Sellers, might observe the arrest and fire on the arresting officers. Since their informant had already been proven correct on the exact location of Sellers' apartment and also on the make and color of appellant's car, the agents' fears could hardly be called unreasonable.

Entering the apartment, the agents hurriedly checked the rooms for occupants, but found only Mrs. Sellers and her two children. However, one agent noticed a pistol in the open drawer of the bedroom nightstand and a costume mask and a pair of gloves in the open bedroom closet. Although this incriminating evidence was seen in plain view, nothing was seized during the cursory search of the apartment. Instead, the agents sought a search warrant based on these observations and on reports of appellant's involvement in bank robberies by two unidentified informants.

Appellant argues that this "protective sweep" of the apartment by the agents was entirely unwarranted. Under the doctrine of Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), of course, probable cause for the belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant, and it follows that a search for a person or persons should be no less restrictive. Emphasizing that the exceptions to the rule that a search must rest upon a search warrant are jealously guarded, appellant points to the following circumstances: (a) the agents here had seen no activity all during the night save the turning on of a light around 6 A. M.; (b) Sellers was unarmed at the time he was arrested and gave no resistance; (c) Sellers' wife and children were standing at the open door of his upstairs apartment and the officers had a commanding view of the portion of the apartment which overlooked the parking lot where the arrest took place; (d) the officers made no effort to secure a search warrant; and (e) while it is conjectural whether one could have been obtained, the fact is that the only additional information made available by the search was that no accomplices were present. Given these facts, Sellers contends that there were no "exigent circumstances" to justify the intrusion, citing United States v. Basurto, 497 F.2d 781 (9th Cir. 1974); United States v. Cooks, 493 F.2d 668 (7th Cir. 1974); and United States v. Gamble, 473 F.2d 1274 (7th Cir. 1973).

We do not find appellant's cases helpful. In none of them did the officers have reasonable grounds, such as those here, to believe that the arrestee was travelling with armed associates. On the other hand there are several cases which are more instructive. For example, in United States v. Looney, 481 F.2d 31, 33 (5th Cir. 1973), the court approved the conduct of agents in making "a cursory security search to protect their lives" when the arrestee's confederates might be present. Furthermore, the Eighth Circuit has upheld an officer's "right to conduct a quick and cursory viewing of the apartment area for the presence of other persons who might present a security risk." United States v. Briddle, 436 F.2d 4, 7 (8th Cir. 1970); accord United States v. Blake, 484 F.2d 50, 57 (8th Cir. 1973). We therefore find no constitutional infirmity in the agents' cursory sweep of Sellers' apartment, and in turn find it to be the linchpin of the search warrant affidavit.

■ Sellers attacks the affidavit on the grounds that—even with the allegations about the gun, mask, and gloves spotted during the "protective sweep"— it does not allege that the informers were reliable nor does it allege sufficient

facts for the magistrate to so conclude. Appellant argues that:

> Handguns and gloves are common items to be found in most any residence. While a costume mask, even a month before Halloween, may be an unusual item to find in a dwelling, in the context of this case it certainly is not sufficient to establish probable cause.

We cannot agree. As he admits himself in his brief, "the mask connects with the informer's tip, as in *Spinelli*, where the informer's tip is a necessary element in the finding of probable cause." The observations of the agents in their initial sweep of Sellers' apartment provide ample corroboration for the informers' allegations of appellant's complicity in bank robbery. *See* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Simpson, 453 F.2d 1028 (10th Cir.), cert. den. 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972).

## II.

█ Appellant urges that his Sixth Amendment rights were violated by the conduct of his trial counsel and by the district court's denial of his motion for compulsory production of witnesses. We see no merit to these claims.

It appears from the record that Sellers' counsel was initially retained by appellant's family for a fee of some $1,000. On April 25, 1974, an evidentiary hearing was held on appellant's motion to suppress the evidence seized in the September 25, 1973, search of his apartment and counsel vigorously acted on behalf of Sellers at that hearing. At the end of the day, the court appointed him to serve as Sellers' counsel when it was determined that appellant was indigent and his family could no longer pay for retained counsel. By letter filed May 3, 1974, the motion to suppress was denied, and on May 7, 1974, counsel conferred with the district court in an effort to secure an interlocutory appeal of the ruling.

The next day, May 8th, when the trial was scheduled to begin, an associate of appellant's counsel appeared in court and announced that the latter desired to withdraw from the case, allegedly because his relationship with Sellers had deteriorated. The district court was incredulous, pointing out that only the day before no indication of such a difficulty had been manifested. Sellers himself remarked in open court that his counsel was "a first-rate lawyer." The trial judge then insisted that counsel make his appearance and that the trial proceed as scheduled.

At that point, appellant raised the issue of his counsel's failure to subpoena three witnesses who, according to Sellers, could exonerate him. When Sellers' attorney finally appeared, a lengthy colloquy ensued in which affidavits from three inmates of the federal prison at Marion, Illinois, were produced. These inmates—one of whom was a personal friend of appellant—offered to identify as the true bank robbers certain unnamed parties whose conversations and letters supposedly boasted of their feats. Both appellant and his counsel disclaimed knowledge of how the inmates learned of the case and of counsel's name even though the affidavits referred to previous contact with the counsel.

Prior to trial, a hearing was held on appellant's motion for a continuance and his request to subpoena these and other witnesses. Sellers took the stand and defended the pertinency of his list of proposed witnesses. From the transcript of proceedings, it appears that the trial judge found appellant's assertions that his counsel refused to subpoena these witnesses to be incredible and therefore denied the continuance and the subpoenas. Under Fed.R.Crim.P. 17(b), a defendant must make a satisfactory showing that "the presence of the witness is necessary to an adequate defense" in or-

der to be entitled to compulsory process. Here, appellant failed of his burden, since, as the trial court later explained to Sellers, "none of the things that you say they would testify to would have been relevant or competent or admissible in evidence." We thus conclude that appellant was denied neither effective assistance of counsel nor the right to witnesses in his own behalf as guaranteed by the Sixth Amendment.

### III.

■ We turn then to appellant's last contention. Sellers claims that the case was improperly submitted to the jury under instructions which allowed them to convict him of both possession of stolen bank funds under 18 U.S.C. § 2113(c) and theft of bank funds under 18 U.S.C. § 2113(a), (b) & (d). We agree. Under Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), it is firmly established that § 2113(c) was not enacted to enhance the punishment for one who robs a bank but only to provide punishment for a separate and distinct class, those who receive the loot from the robber. *Accord* Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). We are unpersuaded by the Government's proffered distinction between "receiving" and "possession" and decline to follow United States v. Tyler, 466 F.2d 920 (9th Cir.), cert. den., 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972); nothing in the legislative history of § 2113(c) or the Supreme Court's opinion in *Heflin* would justify such a distinction.

■ The question remains as to the proper remedy in such circumstances. Here, the trial court imposed a single, general 20-year sentence on appellant for all of the counts. Although Sellers could have been sentenced for up to 25 years on § 2113(d) or 20 years on § 2113(a), the maximum sentence available under § 2113(c) is only ten years.

Since the penalty which was actually imposed exceeds that prescribed for the possession count, the rule of judicial convenience employed in United States v. Mims, 340 F.2d 851 (7th Cir. 1965), is therefore inapplicable. Searching the cases for guidance, we note that the Fifth Circuit would apparently require a new trial without further ado, *see* United States v. Abercrombie, 480 F.2d 961, 964 (5th Cir. 1973); United States v. Gaddis, 506 F.2d 352 (5th Cir. 1975).

We think, however, that there is another solution short of a new trial which would suffice "to cure any prejudice resulting from the trial judge's failure to instruct the jury properly," *Milanovich, supra,* 365 U.S. at 555, 81 S.Ct. at 730. *Cf.* United States v. Lemonakis, 158 U.S. App.D.C. 162, 485 F.2d 941, 966 (1973). Since the proof of guilt on the possession count is overwhelming and the proof on the theft counts circumstantial, a stipulation by the Government that proof of guilt went only to the lesser count would give appellant the benefit of the doubt and justify our vacating the three theft counts. If, on remand, such a stipulation is entered, it remains necessary for the court to resentence Sellers on the possession count alone. Should the Government choose not to so stipulate, the conviction on all counts will be vacated and Sellers awarded a new trial.

For the reasons stated, the judgment is set aside, and the case remanded to the district court for proceedings consistent with this opinion.

It is so ordered.

### ORDER

On motions of the Niagara Fire Insurance Company and the Union Trust Company of Fallston, North Carolina, for the return of certain monies now in the possession of the United States Marshal for the Western District of North Carolina, said monies having been seized by Federal Bureau of Investigation agents pursuant to a search of the apartment occupied by Willie Foster Sellers and wife in Atlanta, Georgia, on or

about September 25, 1973, it is hereby ordered that the matter be referred to the United States District Court for the Western District of North Carolina for disposition following further proceedings in the criminal case against the afore-mentioned Willie Foster Sellers recently remanded in our decision of April 10, 1975. Defendant's motion will be filed.