UNITED STATES of America, Appellee,

v.

**Eli CRAWFORD, Appellant.**

UNITED STATES of America, Appellee,

v.

**Ernest Barrow BIARD, Appellant.**

**Nos. 77–3193 and 77–3192.**

United States Court of Appeals,
Ninth Circuit.

May 12, 1978.

Rehearing Denied June 14, 1978.

---

Paul Mike Goorjian, Fred Baker, San Francisco, Cal., for appellants.

Malcolm Segal, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BROWNING and WRIGHT, Circuit Judges, and TAYLOR, District Judge.*

PER CURIAM:

Appellants Crawford and Biard appeal from their convictions for armed robbery of United States Postal Service employees in violation of 18 U.S.C. § 2114. We affirm.

The evidence indicates that at approximately 2:00 p. m. on May 17, 1977, two men entered U.S. Post Office Station A on Steiner Street in San Francisco. One of the men, later identified as appellant Crawford, approached postal clerk Elbert Hicks, pointed a gun and demanded cash and money orders. Hicks complied, handing over both currency and blank postal money orders. A postal supervisor who happened to come within Crawford's view was ordered to stop or be killed.

During this time, Mrs. Lillie Freightman, the other postal clerk on duty, was approached at her window by a second man who also showed a gun and demanded money. Mrs. Freightman complied with the gunman's demand and managed to push a button activating a surveillance camera. The gunman, later identified as appellant Biard, briefly left the post office at one point to retrieve a customer who had observed the situation and fled. After relieving the anxious customer of the contents of his wallet, Biard and Crawford left the post office.

Shortly after the robbery, Postal Inspector Edward Schierberl caused the film from the surveillance camera to be processed and succeeded in identifying a suspect from the photos. That evening Inspector Schierberl, representing himself as a dishonest bank employee, telephoned the suspect whose voice Schierberl later identified as that of appellant Crawford. Crawford indicated that he had twenty-five postal money orders and that his partner had another twenty-five. Schierberl agreed to buy all fifty for $5,000. A meeting was subsequently arranged for the next afternoon, May 18, at a parking lot.

The next day, other postal inspectors and police officers set up surveillance at the parking lot. Crawford arrived as a passenger in a car driven by appellant Biard. Biard and the car he drove matched the description previously given to Inspector Schierberl by Crawford. As Crawford walked toward Schierberl's car, the other police and postal inspectors closed in and arrested both Crawford and Biard. Before he was apprehended, Crawford took an envelope from his coat pocket and threw it into the back seat of Schierberl's car. The envelope was found to contain fifty blank postal money orders, some of which carried appellant Biard's fingerprints.

On July 20, 1977, a jury found Crawford and Biard guilty of armed robbery of the two postal employees and placing their lives in jeopardy in violation of 18 U.S.C. § 2114 (Count One) and of receiving and possessing stolen blank postal money orders in violation of 18 U.S.C. § 500 (Count Two). Judgments of conviction were entered only on the armed robbery count. The receiving and possession count was dismissed by the court at the time of sentencing as duplicitous of the robbery charge. Each appellant was sentenced to 25 years imprisonment.

Three issues raised by these appeals merit discussion. The first issue, raised by appellant Biard, is whether the in-court identifications of appellant Biard by the two postal clerks should have been excluded from the evidence as the product of impermissibly suggestive identification procedures. The thrust of Biard's argument is that since neither of the postal clerks was able to identify him with certainty prior to trial as one of the armed robbers, their identifications of him at trial were the result of improper suggestive identification procedures on the part of the government, therefore violative of due process.

The evidence shows that postal clerk Hicks was present at each of two lineups held May 19, 1977, two days after the robbery. He was told that the lineups included two men apprehended as suspects. He was able to identify one of the suspects (appar-

* Sitting by designation.

ently Crawford), but was unable to positively identify Biard. Hicks was also unable to identify Biard a few days prior to trial from photos of the same lineups. At trial, the identification of Biard by Hicks was positive and remained unshaken on cross-examination.

Lillie Freightman was not present at the May 19 lineups, but was shown a video tape of the lineups approximately a week after the robbery. She was also shown the photos taken by the surveillance camera. She then identified Biard from the lineup. At a meeting prior to trial, Freightman saw an enlarged mug shot of appellant Biard on the postal inspector's desk, but the photo was not discussed. At trial, she identified Biard but the certainty of her identification wavered somewhat on cross-examination.

■■■ A conviction based on an in-court eyewitness identification following the use of pre-trial photographic identification procedures will be set aside only if the photo identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This Court has generally followed a two-part approach in applying the test set forth in *Simmons. See e. g., United States v. Valdivia,* 492 F.2d 199, 210 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). First, the necessity of the photo identification procedure is examined. Then the likelihood of irreparable misidentification is evaluated on the basis of several factors, i. e., the witness's opportunity to observe the perpetrator during the commission of the crime, the similarity between the witness's prior description of the criminal and the

characteristics of the defendant identified at trial, the presence and influence of other witnesses at the time of the prior identification, and the conduct on the part of the government agents tending to focus the witness's attention on the defendant.[1]

■■■ This court has held, however, that the lack of necessity for a pre-trial identification procedure is not sufficient by itself to invalidate an in-court identification or require reversal. *United States v. Calhoun,* 542 F.2d 1094 (9th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); *United States v. Valdivia, supra.* Thus the first part of the two-part approach seems to be of no real consequence. If the photo identification procedure was unnecessary and if that fact is to be given effect at all, it must be considered within the second part of the approach.

■■■ It should be recognized that only the second part of the stated approach is mandated by *Simmons.* According to *Simmons,* the sole standard to be applied is whether a "very substantial likelihood of irreparable misidentification" existed in light of the totality of the surrounding circumstances. 390 U.S. at 383, 88 S.Ct. at 971. The Supreme Court in *Simmons* did, however, consider the necessity of the pre-trial photo identification procedures employed there, but only in relation to the conduct of the law enforcement officials. The same is true of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), cited in *Simmons.* It therefore appears that the necessity, or lack of it, for pre-trial photo identification procedures should properly be considered, not as a separate standard, but as part of the evaluation of the conduct on the part of the government agents which

---

1. In *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court stated some similar factors, originally set out in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that should be considered in determining admissibility of evidence involving pre-trial confrontations. *Manson* and *Biggers,* however, involved challenges to evidence of separate pre-trial identifications introduced as part of the prosecution's case, evidence distinct from the in-court identification of the defendant. *See United States v. Fowler,* 439 F.2d 133, 134 (9th Cir. 1971) and *United States v. Baxter,* 492 F.2d 150 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Therefore, the factors stated in *Manson* and *Biggers* are not precisely applicable here where no prior confrontation or identification was introduced in evidence by the government and where only the in-court identification is challenged.

may have tended to focus the witness's attention on the defendant.

Turning, then, to the *Simmons* test, it is clear that both postal clerks had ample opportunity to observe the second robber during the course of the robbery. Freightman was directly confronted by this man for an estimated five to ten minutes. Hicks testified that he looked over at the second gunman and also watched him retrieve the customer who had fled.

The general descriptions of the second robber given by Hicks and Freightman prior to trial did not materially differ from Biard's physical appearance at trial, except for the fact that the robber wore a hat and sunglasses during the robbery. Furthermore, there is no indication that one postal clerk had any influence on the other during the identification process since they viewed the lineups and photos at different times.

The record does not indicate that the government agents excessively focused the attention of the postal clerks on Biard. Although Hicks was told before hand that the two suspects apprehended would be present in the May 19 lineups, there were no comments specifically directing his attention to Biard. The same is true of the showing of the lineups and photos to Freightman. Freightman's glimpse of the enlarged photo of Biard on the postal inspector's desk was not requested nor was the photo the subject of any discussion.

The photo identification procedures used in this instance by the government agents were not necessary in order to aid in Biard's apprehension. He was in custody at the time that Hicks and Freightman viewed the lineups and photos. However, a positive pre-trial photo identification of Biard by one or both of the postal clerks would more clearly have established the evidentiary connection between Biard and the robbery, and assured the government agents that they were on the right track. *Cf. Simmons, supra,* 390 U.S. at 384–385, 88 S.Ct. 967.

■ Considering in the in-court identifications in light of all the circumstances, including the lack of urgent necessity, we cannot say that the identification procedures employed prior to trial were so suggestive as to taint the in-court identifications of Biard as the second robber. While the viewing of a photo or group of photos of a particular person may itself be suggestive to some degree, the procedures and occurrences here do not reach the suggestive proportions of those in *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), cited by Biard, where the suggestive elements in the pre-trial identification procedures "made it all but inevitable" that the witness would identify the defendant "whether or not he was 'in fact 'the man' ". 394 U.S. at 443, 89 S.Ct. at 1129. Short of a "very substantial likelihood of irreparable misidentification", the weight of such evidence is for the jury. *Manson, supra,* 97 S.Ct. at 2254. *See also United States v. Collins,* 559 F.2d 561 (9th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). The jury here was presented with substantial evidence bearing upon the reliability of the identifications of Biard by Hicks and Freightman.

■ The second issue raised by these appeals revolves around the giving of a jury instruction very similar to one given in *United States v. Hudson,* 564 F.2d 1377 (9th Cir. 1977), decided after briefing was completed here. The defendant in *Hudson* was convicted of armed post office robbery under 18 U.S.C. § 2114, one of the same statutes involved here. To satisfy the "armed" element of this offense, the government must prove that the defendant put the postal employee's life "in jeopardy by the use of a dangerous weapon". The jury in *Hudson* was instructed that jeopardizing the life of a person by the use of a dangerous weapon meant to "expose such person to a risk of death, or to the fear of death, by the use of such dangerous weapon or device". Since the test for jeopardy is an objective one, proof of "fear of death" alone is insufficient to convict. *Wagner v. United States,* 264 F.2d 524 (9th Cir.), *cert. denied,* 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). This court, per Judge Choy, therefore held in *Hudson* that:

". . . a fair reading of the instruction given leaves the impression, not cured elsewhere after considering the jury charge as a whole, that the jury could convict for armed robbery if it found either actual risk of death or mere fear. It is the possibility that the appellant was convicted on the second and clearly improper basis that warrants the reversal of his conviction." 564 F.2d at 1380. [footnote omitted]

At the trial of Biard and Crawford, the jury was given an instruction much the same as that in *Hudson*. Thus the question presented here is whether the erroneous impression given by a fair reading of the instruction is cured elsewhere, considering the jury charge as a whole.

■ It is our opinion that the error was substantially cured by the remainder of the instructions. While the trial judge did not specifically refer to and negate the statement which implied that fear of death might be sufficient to constitute "jeopardy", he did give a single corrective instruction to the jury after a conference with all counsel and prior to closing argument. From the context in which this instruction was given, it is reasonably clear that the jury knew it to be a corrective and superseding instruction. This instruction further explained the government's burden to prove that the defendants "did put in jeopardy" the lives of the postal clerks "by the use of a dangerous weapon, to-wit, a handgun". Fear of death was not mentioned. The court emphasized in this instance, as well as others, that a conviction for armed robbery under the language of the indict-

ment required proof that the defendants effected the robbery by putting the lives of the postal clerks in jeopardy by the use of a handgun as charged. There was repeated emphasis on the fact that the handgun used must have been operative and capable of firing a bullet.

Therefore, considering the jury charge as a whole, the case here is distinguishable from *Hudson* on the ground that the jury was sufficiently instructed that it had to find that the lives of the postal clerks were placed in jeopardy by the use of a dangerous weapon and that conviction required more than a finding of mere fear of death. It is obvious from the record that the jury found the lives of the postal clerks were placed in actual jeopardy.

The third and probably the most significant issue is whether reversible error occurred as a result of the trial court's failure to instruct the jury that each defendant could only be convicted of armed robbery under Count One or of receiving and possessing stolen postal money orders under Count Two, but not of both.[2] Although neither appellant requested such an instruction, both now contend that the failure to so instruct was plain error. Appellants argue that had this instruction been given, they each might have been convicted only of receiving and possessing the stolen money orders under Count Two and not of armed robbery under Count One, in which event they would have been exposed to only a five-year maximum term of imprisonment rather than to the twenty-five year sentence specified in 18 U.S.C. § 2114. The

2. Count One charged appellants with violation of 18 U.S.C. § 2114 which states in pertinent part:

"Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States . . ; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in

jeopardy by the use of a dangerous weapon, . . . shall be imprisoned twenty-five years."

Count Two charged a violation of 18 U.S.C. § 500 which states in pertinent part:

"Whoever receives or possesses any [blank money order form provided by or under the authority of the Post Office Department or Postal Service] with the intent to convert it to his own use or gain or use or gain of another knowing it to have been embezzled, stolen or converted . . . [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both."

government contends that the trial court properly cured any claimed error by the dismissal of Count Two at the time of sentencing.

■ There is little doubt that the failure to so instruct the jury was error. In *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), the Supreme Court reaffirmed the rule stated in *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), that a defendant convicted of bank robbery cannot also be convicted and sentenced for receiving and possessing the proceeds of that robbery. This rule is apparently based on the rationale that "Congress was trying to reach a new group of wrongdoers" by enacting the receiving and possessing statute, and was not attempting to "pyramid penalties for lesser offenses following the robbery". *Heflin,* 358 U.S. at 419–420, 79 S.Ct. at 454. Although *Heflin* and its progeny have dealt primarily with the provisions of 18 U.S.C. § 2113, the federal bank robbery statute, or with 18 U.S.C. § 641, see *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), the same rule and rationale should apply to convictions under § 2114 and § 500. *See United States v. Moody,* 530 F.2d 809 (8th Cir. 1976); *cf. United States v. O'Neil,* 436 F.2d 571 (9th Cir. 1970). By enacting § 500 to proscribe the receiving and possession of stolen blank postal money orders, Congress intended to reach the illicit traffic in such money orders. *See 2 U.S.Code Cong. & Admin. News,* 92nd Cong., 2nd Sess. pp. 3356–3359 (1972). There is no obvious legislative intent to pyramid the penalties of § 500 and § 2114. The failure to instruct the jury that appellants could not be convicted of both robbery under § 2114 and receiving and possessing stolen postal money orders under § 500 was error.

The government contends that under *United States v. Gaddis, supra,* the error was cured by the dismissal of the receiving and possessing count. Appellants contend that under *United States v. Milanovich, supra,* a new trial is required. In *Milanovich* the petitioner was convicted of larceny and of receiving and possessing stolen currency under 18 U.S.C. § 641. A new trial was ordered because it was impossible to determine whether a jury properly instructed under *Heflin* would have convicted on the larceny count or on the receiving count, thus making it also impossible to say whether the setting aside of the shorter sentence for receiving removed the prejudice to the petitioner.

In the more recent case of *United States v. Gaddis, supra,* the defendants were convicted and sentenced under various sections of § 2113 for armed bank robbery and possession of stolen bank funds. The Court held that since the evidence was insufficient on the possession count, the error could be corrected by vacating the convictions and sentences on that count. *Milanovich* was distinguished by pointing out that in that case, there was sufficient evidence on both the larceny and the receiving counts to go to the jury. The Court, however, explained the duties of the trial court in a situation like *Milanovich* where there is sufficient evidence on both robbery and receiving counts for submission to the jury. The Court stated the order in which these counts should be considered by the jury:

". . . If, upon the trial of the case the District Judge is satisfied that there is sufficient evidence to go to the jury upon both counts, he must, under *Heflin* and *Milanovich,* instruct the members of the jury that they may not convict the defendant both for robbing a bank and for receiving the proceeds of the robbery. He should instruct them that they must first consider the charges under 18 U.S.C. § 2113(a), (b), or (d) [the robbery provisions], and should consider the charge under § 2113(c) [the receiving and possessing provision] only if they find insufficient proof that the defendant was himself a participant in the robbery." [footnote omitted] 424 U.S. at 550, 96 S.Ct. at 1027.

Appellants correctly assert that this case comes within the *Milanovich* situation discussed in *Gaddis.* Here, there was sufficient evidence for submission of both counts

to the jury. We do not agree with appellants, however, that a new trial is required. In stating the manner in which *Heflin* and *Milanovich* are to be applied, the majority in *Gaddis* did not specify what remedy would be appropriate if the proper instructions were not followed, as in the case here. The concurring opinion in *Gaddis,* written by Mr. Justice White, indicates that a new trial is not necessary:

"As the Court states, a jury, having convicted on the robbery count, should stop there without going on to consider the possession count. If the jury is erroneously permitted, however, to consider and convict on the possession count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery count shows that the jury found each element of that offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also possessed the proceeds of the robbery—whether on a different date and on different proof or not—casts no doubt on the trustworthiness of the findings on the robbery count. . . ." 424 U.S. at 551–552, 96 S.Ct. at 1028.

Since the *Gaddis* decision, at least two cases have been decided which presented the same issue as presented here. The case of *United States v. Sellers,* 520 F.2d 1281 (4th Cir. 1975), was vacated and remanded by the Supreme Court for further consideration in light of *Gaddis.* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976). On remand, retired Supreme Court Justice Clark, sitting by designation on the Fourth Circuit Court of Appeals, followed *Gaddis* by re-

versing the conviction for possession and affirming the robbery conviction. 547 F.2d 785. No new trial was ordered. Certiorari was denied, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). Similarly, no new trial was ordered in *Proffitt v. United States,* 549 F.2d 910 (4th Cir. 1976), where the court of appeals expressly followed the concurring opinion of Justice White in *Gaddis.* Certiorari was denied, 429 U.S. 1076, 97 S.Ct. 818, 50 L.Ed.2d 795 (1977). We therefore conclude that, in light of the explication of *Milanovich* in *Gaddis,* a new trial is not required here.[3] The trial court's failure to properly instruct the jury was an error sufficiently cured by the dismissal of Count Two.

The appellants' remaining contentions being without merit, the judgments appealed from are AFFIRMED.

EUGENE A. WRIGHT, Circuit Judge, concurring.

I concur in the result, but I do not agree that *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), affects the rule of *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).[1]

The *Milanovich* Court held that a new trial is required when (1) there is sufficient evidence to go to the jury on both larceny and receiving counts, (2) the trial judge fails to instruct the jury that it may not convict on both counts, and (3) the jury convicts on both counts. The Court so held because, under the circumstances, "there [was] no way of knowing whether a properly instructed jury would have found the [defendant] guilty of larceny or of receiving (or, conceivably, of neither)." 365 U.S. at 555, 81 S.Ct. at 730.

I find this situation factually distinguishable. Here, unlike in *Milanovich,* the evidence of guilt is overwhelming on each of the charges. It is therefore clear that a properly instructed jury would have con-

---

3. The decisions in *United States v. O'Neil, supra,* and *Keating v. United States,* 413 F.2d 1028 (9th Cir. 1969), of this court were based on *Milanovich,* prior to the decision in *Gaddis.*

1. The *Gaddis* majority distinguishes *Milanovich,* and Justice White's concurrence explicitly recognizes the *Milanovich* rule, but disagrees with it.

victed only on the robbery count. Dismissal of the possession count cured the error.