95 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon EDMOND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin SPRINGER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Dion HILL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alondras SAUNDERS, Defendant-Appellant.
 No. 95-10322, 95-10342, 95-10365, 95-10400.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 13, 1996.
Decided Aug. 27, 1996.
 
 1
 Before: BOOCHEVER, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Ramon Edmond, Calvin Springer, Joseph Hill, and Alondras Saunders appeal their convictions and sentences for armed bank robbery. We affirm their convictions but vacate their sentences and remand for resentencing.
 
 FACTS
 
 4
 Three armed men robbed the Bank of America in Las Vegas, Nevada, on July 15, 1992, taking $9,568 from the bank and $900 from a bank customer. In the bank were manager Sharon Diessner, finance service officer Athena Causer-Salsig, new accounts representative Julee Hill, tellers Karen Southwood and Cari Yoss, and five customers. Upon entering, the robbers ordered everyone to get down on the floor. One of the robbers stood at the front door, while the other two proceeded to empty the cash drawers. One robber jumped the teller's counter and ordered teller Southwood to open her drawer. She did and then got down on the floor with her face down. The robber emptied the drawer into a garbage bag. Another robber ordered Julee Hill at gunpoint to empty her drawer. She informed him that she had no cash, and the robber pushed her by the shoulder off her chair, onto the floor. The robber found no cash in her drawer and then went to the back room, where he found Yoss. The robber "guided" her at gunpoint out to the front. When Yoss reached the doorway, she was ordered to get down on the floor. She did, and her keys jingled on the floor. The robber pulled her up by her hair and pushed her to the teller's window to open the drawer. The robber took the keys from Yoss, opened the drawers, and took the cash. The robbery lasted about four to five minutes. On the way out of the bank, the third robber, who was standing at the door, grabbed a customer's purse and took $900. A fourth robber waited in one of the getaway cars.
 
 
 5
 Later that day, Ramon Edmond and Calvin Springer were stopped by police at a 7-Eleven parking lot in Las Vegas at the intersection of Nellis and Charleston. The two men were in a white Nissan rental car driven by Springer that was initially stopped by police who suspected it was emitting a B-pak signal from stolen bank money. The police searched and questioned the two men, but released them from custody after no B-pak or incriminating evidence was found in the search of the Nissan. During this time, FBI Agent Young drove Causer-Salsig over to the location to make an identification. Recognizing the shirt of one of the men as the shirt of one of the robbers, she said, "Yes, yes, yes," as they approached the 7-Eleven. She did not get out of the car or make an identification, however, and Young did not detain either man.
 
 
 6
 Afterwards, the police stopped a blue Chevy Astro van carrying Alondras Saunders and Joseph Hill at the intersection of Lake Mead and Boulder. The van had been rented by Tammi Kerr and paid for by Springer. The police found articles of clothing and stolen bank money in the van and then arrested Saunders and Hill.
 
 
 7
 Saunders gave a confession to the police that incriminated Edmond, Hill, and Springer. The California Highway Patrol arrested Edmond and Springer later that day in Victorville, CA.
 
 PROCEEDINGS
 
 8
 On August 26, 1992, an eight-count federal indictment was filed against Edmond, Hill, Saunders, and Springer, charging them with conspiracy, armed bank robbery, use of a firearm in a crime of violence, interstate transport of a stolen firearm, and receipt of a stolen firearm. Edmond, Hill, and Springer were also charged with being a felon in possession of a firearm.
 
 
 9
 After the first jury trial ended in a mistrial on the second day because of juror misconduct, a second jury trial was held against all of the defendants on May 5, 1993 through May 13, 1993.
 
 
 10
 Athena Causer-Salsig was a witness for the prosecution, who testified on two days at trial. During her cross-examination, she revealed that she was taking medication prescribed for anxiety (Xanax) and a bleeding ulcer (Zantac) that made her forgetful. The district court called for a side bar, at which the government admitted knowing about her use of medication but claimed that it tried to disclose that fact during direct testimony but was cut off by defense counsel's objection. The district court then dismissed the jury and conducted a voir dire of Causer-Salsig.
 
 
 11
 Defense counsel moved to strike Causer-Salsig's testimony. Edmond's counsel also moved for a mistrial, on the ground that his opening statement and theory of the defense had been undermined by the witness's incompetent testimony, which was the only evidence that placed Edmond inside the bank. In a FBI interview Causer-Salsig said that she saw one of the robbers wearing a distinctive "paisley" shirt. The 302 report had not been disclosed to defense counsel before her testimony, and Edmond's counsel had prepared his opening statement based on the argument that no evidence linked Edmond to the robbery. At trial Causer-Salsig identified the shirt Edmond was found wearing when arrested as the shirt. The fact that Causer-Salsig was on medication was not disclosed to the defense or the district court prior to her testimony.
 
 
 12
 The district court found that Causer-Salsig was incompetent to testify because of her medication and other factors. The court ordered her testimony stricken and gave an instruction to the jury to disregard her testimony. The district court denied the motion for a mistrial and the motion to exclude the shirt. Agent Young later testified about Causer-Salsig's drive-by identification of the shirt; her statement was admitted as an excited utterance.
 
 
 13
 The district court granted judgment of acquittal for all the defendants on the offenses of interstate transportation and receipt of a stolen firearm. On all the remaining counts, the jury returned guilty verdicts against each of the defendants.
 
 
 14
 Edmond was sentenced to serve concurrent terms of imprisonment of 60 months on count 1 (conspiracy), 300 months on count 2 (armed bank robbery), 120 months on count 6 (felon in possession of a firearm), and a consecutive term of 60 months on count 3 (use of a firearm in a crime of violence).
 
 
 15
 Springer was sentenced to serve concurrent terms of imprisonment of 60 months on count 1, 300 months on count 2, 120 months on count 7, and a consecutive term of 60 months on count 3.
 
 
 16
 Hill was sentenced to serve concurrent terms of imprisonment of 60 months on count 1, 200 months on count 2, and 120 months on count 8 (felon in possession of a firearm), and a consecutive term of 60 months on count 3.
 
 
 17
 Saunders was sentenced to serve concurrent terms of imprisonment of 60 months on count 1, 128 months on count 2, and a consecutive term of 60 months on count 3.
 
 
 18
 The defendants timely filed notices of appeal.
 
 ANALYSIS
 
 19
 The district court did not abuse its discretion in denying the defendants' motions for a mistrial. The district court's curative instructions, which came after the striking of Causer-Salsig's testimony and again before Agent Young's testimony, were sufficient to cure any prejudice from the jury's hearing of Causer-Salsig's testimony. See United States v. Escalante, 637 F.2d 1197, 1202-03 (9th Cir.), cert. denied, 449 U.S. 856 (1980). Causer-Salsig's identification of the "paisley" shirt was, moreover, properly admitted as an excited utterance through Agent Young's testimony. Finally, we find no Brady violations in the government's belated disclosures. Neither Agent Young's report nor his placement on the prosecution's witness list is exculpatory Brady material. Causer-Salsig's use of medication, although impeachment evidence, was disclosed by the government at an early enough time at trial when it was still of substantial value to the defendants and allowed them to get her testimony stricken. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988).
 
 
 20
 Edmond and Hill contend that their sixth amendment right to confront witnesses was violated by Agent Lawson's testimony describing Saunders's confession. Saunders did not take the stand, and his confession was properly redacted under the Bruton rule. Richardson v. Marsh, 481 U.S. 200, 209 (1987). In testifying shortly after Saunders's confession was read to the jury, Agent Lawson made three references to the other "defendants" in describing how Saunders said they made their getaway. The district court's instructions ordering the jury not to consider Saunders's confession against any of the other defendants, which it delivered during Lawson's testimony, the morning afterwards, and at the close of trial, were sufficient to cure any prejudice from Lawson's inappropriate references to the other defendants.
 
 
 21
 Hill objects to the identifications of him by Tammie Kerr, Lori Spellman, and Sharon Diessner. None of the in-court identifications of these witnesses was improperly conducted. Nor were the in-court identifications of these witnesses tainted by an impermissibly suggestive out-of-court identification. The closest issue is presented by Diessner's identification. We do not find her viewing of a videotape that had footage of the same scene that she had witnessed on the day of the robbery was impermissibly suggestive. See United States v. Crawford, 576 F.2d 794, 798 (9th Cir.) (per curiam), cert. denied, 439 U.S. 851 (1978).
 
 
 22
 The government concedes that the district court erred in calculating the sentences of the defendants. The district court misapplied the Guidelines by upwardly departing under application note 2 to § 2K2.4 beyond the maximum amount that section allows. Under § 2K2.4, a conviction for the use of a firearm in violation of 18 U.S.C. § 924(c) is to be sentenced as required by statute--60 months imprisonment. U.S.S.G. § 2K2.4 (Nov. 1994). The court is not to consider the specific offense characteristic relating to the use of a gun in calculating the offense level, such as brandishing a weapon in a robbery under § 2B3.1(b)(2)(C), unless the sentence required by statute "produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 924(c)." Id. note 2. In such a case, the court may upwardly depart by an amount that "shall not exceed the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 924(c)." Id. For Edmond, the court mistakenly calculated an offense level of 32, carrying a high-end of 210 months, with an additional 60 months for the § 924(c) conviction. That amount exceeds by 60 months the maximum amount that would have resulted had there not been a § 924(c) conviction; for Edmond, that maximum would be 210 months (based on an offense level of 27 plus a 5-level enhancement and a category IV criminal history). The maximum upward departure for Edmond's sentence under application note 2 to § 2K2.4 is 25 months. Cf. United States v. Oliver, 60 F.3d 547, 555-56 (9th Cir.1995).
 
 
 23
 The same kind of error was made in the sentences of Hill and Springer. The upward departure should not have been from offense level 27 to 32, with an additional 60 consecutive months for the § 924(c) conviction. Instead, the maximum upward departure under application note 2 to § 2K2.4 for Hill (Category III) is 20 months, and for Springer (Category VI) 40 months. The error in the sentences of Edmond, Hill, and Springer requires vacation of their sentences and a remand for resentencing.
 
 
 24
 The district court departed upward only 20 months in Saunders's sentence. This departure, when added to the 60 months imprisonment for the § 924(c) conviction, equals an amount within the maximum permitted under application note 2 to § 2K2.4. Remand of Saunders's sentence is not warranted on this basis.
 
 
 25
 Remand of Saunders's sentence, along with the other defendants' sentences, is warranted by the district court's failure to make a specific factual finding of bodily injury to support the 2-level enhancement under § 2B3.1(b)(3)(A). The Guidelines define "bodily injury" as "any significant injury, e.g., any injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 note 1(b). The district court based its findings of bodily injury on the defendants' treatment of Julee Hill and Cari Yoss. Hill was "knocked off her chair, thrown to her knees and hands on the floor," while Yoss was "picked up by her hair" and "lifted to her feet." These findings describe the defendants' conduct, but say nothing about the effect of such conduct on Hill or Yoss. While having one's hair pulled and being thrown to the floor may result in a significant injury, it is also possible that such conduct will produce no injury or only an insignificant one. Cf. United States v. Foppe, 993 F.2d 1444, 1453 (9th Cir.), cert. denied, 510 U.S. 1017 (1993); United States v. Harris, 44 F.3d 1206, 1218 (3d Cir.), cert. denied, 115 S.Ct. 1806 (1995). Whether a bodily injury is suffered by a person who is pushed or has her hair pulled depends on the facts. The record, however, is silent as to whether Hill or Yoss suffered an injury from being shoved or being pulled by the hair. The district court is instructed to make specific findings as to the bodily injury suffered by any of the victims, particularly, as to whether there was any "painful and obvious" injury, or some injury "of a type for which medical attention ordinarily would be sought."
 
 
 26
 The parties have agreed to a general remand for resentencing, at which the court is to begin anew and consider all sentencing issues and evidence presented by the government or defendants. We address some of the defendants' other sentencing challenges, as they may resurface at resentencing. We express no view, however, on the district court's alternative or "umbrella" bases for upward departure for multiple robbers and guns as elaborated in United States v. Omar, 16 F.3d 1168 (11th Cir.1994), amended, 24 F.3d 1356 (11th Cir.1994), or for "extreme conduct" under § 5K2.8.
 
 
 27
 First, we reject the defendants' contention that the district court erred in finding physical restraint of a victim to warrant an enhancement under § 2B3.1(b)(4)(B) based on several tellers being dragged or pulled by the hair. Application note 1 of § 2B3.1 refers to the definition of "physically restrained" in § 1B1.1. See U.S.S.G. § 2B3.1. Section 1B1.1 defines "physically restrained" as "the forcible restraint of the victim such as being tied, bound, or locked up." Id. § 1B1.1 note 1(i). "Such as" makes clear that "being tied, bound, or locked up" are "merely illustrative examples of physical restraint." United States v. Foppe, 993 F.2d 1444, 1452 (9th Cir.), cert. denied, 510 U.S. 1017 (1993). The background note pointed out by the defendants does not "expressly modif[y]" the definition in § 1B1.1 to which § 2B3.1 refers for the definition of physically restrained.
 
 
 28
 We reject Hill's and Springer's challenge to the application of a one-level enhancement to their sentence for loss over $10,000, which the district court calculated by adding the $9,564 stolen from the bank and the $900 stolen from the bank customer by one of the robbers. They argue that the money taken from the customer was not part of the conspiracy to rob the bank. Under the Guidelines, a defendant who engages in a jointly undertaken criminal activity is accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). It was reasonably foreseeable that one of the bank robbers might have robbed a bank customer while robbing the bank and done so in furtherance of the jointly undertaken criminal activity, to get more proceeds from the taking of money. Cf. id. note 2(b).
 
 
 29
 The district court departed upward two levels on alternative grounds (1) that multiple victims sustained bodily injury, (2) that multiple victims were physically restrained, and (3) that multiple robbers and multiple guns were involved. We reject the defendants' argument that the district court abused its discretion in the upward departure based on the physical restraint of multiple victims. See Foppe, 993 F.2d at 1453. Likewise, we find no abuse of discretion for the upward departure based on multiple injuries, as we conclude below that the evidence supports a finding of psychological injury suffered by several tellers.
 
 
 30
 We reject the defendants' argument that the district court abused its discretion in imposing a 2-level upward departure under § 5K2.3 for extreme psychological injury to Yoss and Causer-Salsig. At the sentencing hearing, Yoss said she had recurring nightmares of the robbery and consequently has given up her banking career; she had trouble watching television or reading material because of her fear of being reminded of the robbery. In a letter dated June 5, 1995 to the court, Causer-Salsig wrote: "I have relived those minutes almost every day since the event. The grueling hours after the robbery pulled out every last ounce of strength, both emotionally and physically, that I had." Such evidence supports a finding of extreme psychological injury, or "a substantial impairment of the intellectual, emotional, or behavioral functioning of a victim." U.S.S.G. § 5K2.3; see United States v. Chatlin, 51 F.3d 869, 874-75 (9th Cir.1995).
 
 
 31
 Finally, we reject the challenge to the upward departure for the robbery of the bank customer. A court may depart for an aggravating circumstance not adequately taken into consideration by the Guidelines, see U.S.S.G. § 5K2.0, such as here where the robbery of a bank customer is a state, not federal crime.
 
 
 32
 Accordingly, we AFFIRM the convictions of Edmond, Springer, Hill, and Saunders, but VACATE their sentences and REMAND for resentencing not inconsistent with this opinion.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3